WILLIAM P. YOUNG, Complainant and Appellant,

*vs.*

TIMOTHY WRIGHT, Defendant and Appellee.

APPEAL IN EQUITY FROM THE CIRCUIT COURT OF MILWAUKEE COUNTY.

Where a principal executes a power of attorney in due form of law, granting to the agent general power to sell and convey certain lands belonging to the principal, a private agreement between principal and agent, made in form of a receipt by the agent, stating that he (the agent) promises to use the power of attorney according to instructions to be given by the principal from time to time in reference to the subject matter of the power of attorney, does not limit the authority of the agent as to third parties, having no knowledge of such understanding between principal and agent.

Where a contract in writing is made for the sale of land, in two parts, between the vendor by his agent and the vendee, without being witnessed and acknowledged, and after the power of attorney authorizing the agent to make the contract, is revoked, the agent, for the purpose of entitling the contract to be recorded, without the privity of the vendee, and without fraudulent intent, causes the copy of such contract retained by him, to be attested by witnesses, and then acknowledges the execution thereof as the agent of the vendor, such attestation and acknowledgment is not such an alteration as makes the contract void, and is no defence on the part of the vendor to a bill for specific performance.

Where a bill is filed for the specific performance of a contract for the sale of land for a fair price, the fact, that since the contract was made, the land has become more valuable, is not such a circumstance of hardship as ought to prevent a decree for a specific performance.

THIS was a bill in equity filed by Young, the complainant, to enforce the specific performance of a contract, alleged to have been made by the defendant, Timothy Wright, by his attorney, George E. H. Day, with the complainant, for the sale to the latter of certain lands adjoining the city of Milwaukee.

The bill was filed on the 14th day of November, 1853. The defendant filed his answer, and testimony was taken for both parties.

Upon the bill, answer and proof, the Circuit Court rendered a decree, dismissing the complainant's bill, with costs, from which decree the complainant appealed. The facts as they appear from the bill, answer, and the proofs taken, and as far as they are material to the disposal of this cause, are sufficiently stated

in the opinion delivered by the court, and are not, therefore, here repeated.

*Peter Yates,* solicitor for appellant.

*Finch & Lynde,* of counsel.

*Browne & Ogden,* solicitors for appellee.

*By the Court,* WHITON, C. J.   The bill of complaint in this case sets out an agreement made by the defendant, by his attorney, George E. H. Day, by which agreement the defendant engaged to sell to the complainant the land described in the bill for the sum of $125 per acre, a part of which was to be paid at the time when the conveyance was executed, and the residue at different times afterwards, the said residue being secured by a mortgage on the property.   The bill alleges a refusal on the part of the defendant to fulfill the contract, although the complainant tendered to the agent that part of the purchase money which was to be paid down, and offered to execute the mortgage to secure the remainder, in accordance with the contract.

The bill prays for a specific performance of the contract.

The defence set up in the answer is, that although Day was the agent and attorney of the defendant, and authorized to sell the land, yet, at the time he executed to said Day the power of attorney which authorized him to sell, the defendant took from him a receipt in writing, declaring that the power of attorney should be used subject to such written instructions as should from time to time be given by the defendant to Day.   That in the month of January, 1853, the defendant received a letter from Day, in which Day advised him that he had sold fifty-eight acres of land for $125 per acre, and two deeds for the defendant and his wife to execute, one of which conveyed to the complainant ten acres, in common with forth-eight acres conveyed to Christian Ihmsen, and the other conveyed forty-eight acres, in common with ten acres conveyed to the complainant.

The answer states that the defendant is informed and believes that at the time of the pretended sale there were no other writings made than the said deeds, and that there was no obligation

on the part of either the complainant or Ihmsen to pay any part of the consideration money. The answer denies that the defendant ever authorized Day to sell the land for the sum of $125 per acre; and that it was, at the time when the pretended sale was made, worth much more than that sum per acre.

The answer states further, that on or about the 12th day of February, A. D. 1853, the defendant executed a formal revocation of the power of attorney given to Day, and at or about the same time wrote to Day, telling him to consider the said power of attorney revoked and canceled. The answer further states, on information and belief, that at this time no note or memorandum in writing of said pretended contract had been made and subscribed either by Day, the attorney for the defendant, or by the complainant, Young, or the said Ihmsen, as by the statutes of the state relating to fraudulent conveyances and contracts of lands there should have been, in order to constitute a valid contract for the sale of said land.

The answer further states, on information and belief, that *after* the defendant had delivered to ratify the contract made by Day, as his attorney, and the complainant; Day and the complainant arranged the contract for the sale of the land set forth in the bill, which was recorded in the office of the register of deeds for Milwaukee county. There are some other matters stated in the answer, but we do not deem it material to notice them.

It is apparent that the principal question to be decided is, whether the contract for the sale of the land was made by Day in a legal form, so as to bind his principal, before his power to sell was revoked?

The testimony of Day to that fact is full and complete, and if it is entitled to credit, is conclusive; he swears positively to the fact, and we see nothing in the testimony introduced on the part of the defendant, or in the circumstances of the case, which ought to destroy his credit as a witness.

The testimony of Sidney Seaton, the witness introduced on the part of the defendant, does not show that the contract for the sale of the land was executed after the revocation of the power of attorney to Day. The witness testifies that he is unable to state the precise day, but that it must have been after the 20th of February, 1853; he thinks between that day and the first day

of March; that it might have been later; that he is not certain about the time. We do not think that we should be warranted by the testimony of this witness, to conclude that the execution of the contract was subsequent to the revocation of the power of attorney, and thus entirely discredit Day's testimony.

The situation of the latter witness, and the part which he took in the transaction to which he testifies, entitle his testimony to greater weight in respect to the time when the execution of the contract took place, than the position of the former, who took no part in the transaction, and who was called upon merely to put his name to the contract as an attesting witness.

From these reasons we are of opinion that the proof is sufficient to show that the contract for the sale of the land was executed by Day while he was authorized to sell it, as the agent of the defendant.

The counsel for the defendant insist that the receipt which Day gave to his principal when he received the power of attorney to sell the land, and which is set forth in the defendant's answer, so limited Day's power to sell under the authority given him, as to make any sales ineffectual to bind the defendant unless they were in conformity to the written instructions which Day received from the defendant.

We do not think this a correct view of the matter. This was an agreement between Day and his principal, and does not seem to have been intended to limit his power to sell the land as it was given in the power of attorney. By it, Day agreed that he would use the power of attorney subject to such written instructions as the defendant might give him, but we do not think that it can affect third persons.

The authority granted to Day, to sell the land, was ample, and an agreement between him and his principal as to the manner in which this power should be exercised, could not affect the power itself. The authorities cited by the defendant upon this branch of the case, are therefore inapplicable.

Another matter urged to show that the contract should not be enforced, is that it has been fraudulently altered by Day, the agent, since the revocation of his power of attorney, and that the alteration was made with the knowledge and consent of the complainant. The alteration consists (as the defendant con-

tends) in procuring witnesses to sign the contract, and in acknowledgment of the same before an officer, so as to entitle it to be recorded. It appears from the testimony, that the contract was acknowledged by Day as the attorney of the defendant, on the 11th day of April, 1853, after the power of attorney was revoked. In regard to the time of this attestation by the witnesses, the testimony is conflicting. The witness Seaton, testifies that it was before the acknowledgment; indeed, it appears from his testimony that he attested it at the time it was executed by Day. Day on the contrary, testifies that it was attested by the witnesses at the time it was acknowledged.

Assuming it to be proved by the testimony, that the attestation by the witnesses, and the acknowledgment by Day, were after the power of attorney was revoked, it remains to be seen what effect these transactions had upon the contract.

The cases cited by the counsel·for the defendant to this point ·(——— vs. ———, 8 *Burr.* 518; *Adams vs. Frye*, 3 *Mit.* 103; *Ford vs. Ford*, 17 *Pick.* 418), do not all support the position assumed by him. The cases of *Ford vs. Ford*, and *Adams vs. Ira Frye*, go no further than to hold, that if the obligee of an unattested bond shall, after its delivery, without ·the knowledge and consent of the obligor, fraudulently, and with a view to gain some improper advantage, procure a person who was not present at the execution of the bond, to sign his name thereto as an attesting witness, such act will avoid the bond and discharge the obligor. But if the act be done without any fraudulent purpose, the bond will not be avoided by such an alteration.

·It appears by the testimony of Day, that when the bargain for the sale of the land was made, two written contracts were drawn up and executed, one by Day, as the attorney of the defendant, and by the complainant, and one by Day alone, and that the former one was delivered to the complainant. It further appears that this contract thus delivered to the complainant has not been altered, but that the one which Day retained has been acknowledged by him, and attested by witnesses. The testimony does not show that this attestation and acknowledgment were made with the consent, or by the procurement of the complainant. Day testifies, that after the defendant had de. clined to execute the deeds of the land, the complainant asked

him what he should do to hold the defendant to the contract if he refused to execute the deeds; that the witness told him, it might be proper for witness to acknowledge the execution of the contract before a competent officer, and have two witnesses, and have the contract recorded; that the witness did acknowledge the execution of the contract, and it was witnessed. Day further testified, that he did not remember, as he told the complainant at the time of the acknowledgment of the contract, that his power of attorney was revoked. This is all the testimony there is in the case to prove that the complainant was privy to the act of Day, by which the alleged alteration of the contract was made: and it fails to satisfy us that the complainant was a party to the alteration, or ought to be affected by it. It does not appear when this conversation took place between the complainant and Day, or how long it preceded the attestation and acknowledgment of the contract; nor does it appear that at the time it was attested and acknowledged, the complainant had any knowledge that the power of attorney of Day had been revoked.

If we should assume that the recording of the revocation of the power of attorney in the office of the register of deeds of Milwaukee county, was constructive notice to the complainant of the fact of revocation, still the want of actual notice repels the idea that the complainant intended to commit a fraud, even if the attestation and acknowledgment were made by his procurement.

The counsel for defendant further contends that this is not a case where a specific conveyance should be decreed, on account of the peculiar circumstances attending the sale, and the hardship of enforcing it, but that the complainant should be turned over to his legal remedy. We do not think that this position can be sustained. Indeed, we see no hardship in a decree for specific performance. The land appears to have been sold for a fair price, and the fact that it has, since the contract was entered into, become more valuable, is not such a circumstance of hardship as ought to prevent a decree for a specific performance.

The decree of the Circuit Court is reversed, and the case remanded for further proceedings according to law.