LONG vs. FULLER, Adm'r &c., and another.

*Power of attorney to "exchange" real estate—Resulting trust—Order of appellate court on reversal of judgment.*

1. A power of attorney to "exchange and convey" a certain lot for other real estate, did not authorize the attorney to purchase land to be paid for in part by an assignment of the principal's interest in said lot (under a contract of sale), and the remainder and greater part in money.

2. In an action by the principal (who had not ratified the purchase) to compel the vendor—who had taken a conveyance of the lot, as assignee of said contract—to convey the same to the plaintiff, this court, on reversing a judgment for the defendant would ordinarily direct judgment to be entered against him as demanded.

3. But said defendant having deceased since the appeal, and his administrator having been substituted as defendant, the heirs not being before the court, the judgment is reversed, and the cause remanded for further proceedings generally.

APPEAL from the Circuit Court for *Walworth* County.

The action was brought by *Elias Long* against *John B. Fuller and wife*. The case is stated in the opinion. Judgment for the defendants; and the plaintiff appealed. Afterwards *John B. Fuller* deceased, and his administrator was made defendant.

*E. & C. T. Wakeley,* for appellant, contended that the transaction between James Long and *John B. Fuller* was not an *ex-*

*change* of property; and that if the assignment of Nute's land contract to *Fuller* was made without authority, the latter took the title in trust for *Elias Long*.    To the latter point they cited Tiff. & Bull. on Trusts, 22; *Garland v. Wynn*, 20 How. Pr. R., 6; *Jarvis v. Dutcher*, 16 Wis., 307, and cases there cited.

*N. S. Murphy*, for respondent, contended among other things: 1. That a trust by operation of law can result only upon proof of money paid by the plaintiff to *John B. Fuller*, for the purchase of the land for plaintiff's use and benefit, and title to be taken in his name, with proof also that the money was used for such purchase, and the title taken in *Fuller's* name.    2 Story's Eq. Jur., § 1210.    2. That the power of attorney authorized the exchange actually made.    *Williams v. Woodard*, 2 Wend., 487; *Wilson v. Troup*, 2 Cow., 228, 232; *Bank v. N. Y. & N. H. R. R. Co.*, 3 Kern., 632–4; 7 Barb., 633; Sugd. on Powers, 459; Hilliard on R. P., 298; Williams on R. E., 434; *Foote v. Colvin*, 3 Johns., 216.

DOWNER, J.    *Elias Long* gave to his brother James Long a power of attorney, authorizing him to collect the debts due to him, and to take possession of his property and manage the same, and transact business for him, "excepting the sale and conveyance of real estate."    Also, in a subsequent part was the following: "My said attorney is nevertheless authorized and empowered to exchange and convey my house and lots in the village of Whitewater for other land or real estate, any thing in these presents to the contrary notwithstanding." *Elias Long*, at the time, was in possession of a lot and house in the village of Whitewater, under a contract with one Nute for a conveyance of the same on the payment of one thousand dollars in installments, and interest thereon at ten per cent.    James Long, while his brother was in prison, made a trade with *John B. Fuller*, and attempted to execute the proper writings as the attorney of *Elias*, to carry it into execution.    *Fuller*, in his tes-

timony, states the bargain thus: "James purchased my farm for *Elias* for $2500: Nute contract $400 ; $2100 payable in installments. Contract to convey to *Elias Long*, when payments all made."

The first question is: Had James Long authority, by virtue of the power of attorney, to make such bargain, and assign the land contract his brother held for the house and lot in the village of Whitewater, or to convey his interest in the same in part payment of the farm?

The authority given to James "to exchange and convey" the house and lot, is special, and must be strictly construed. The word "exchange," when used in reference to real estate, has at common law a definite and well settled meaning. Blackstone, in his Commentaries, Vol. 2, page 323, says: "An *exchange* is a mutual grant of equal interests, the one in consideration of the other. The word 'exchange' is so individually requisite and appropriated by law to this case, that it cannot be supplied by any other word, or expressed by any circumlocution. The estates exchanged must be equal in quantity ; not of *value* for that is immaterial, but of *interest;* as fee simple for fee simple, a lease for twenty years for a lease for twenty years." Jacob, in his Law Dictionary, says: "Exchange of lands is a mutual grant of equal interests in lands or tenements, the one in exchange for the other." He also says : "There is a tacit condition of re-entry in this deed, on the lands given in exchange, in case of eviction, and on the warranty to vouch and recover over in value. For if either of the parties is evicted, even of a part, the exchange is defeated."

If the word "exchange" in the power of attorney is used in the sense in which these learned authors use it, then James Long had no authority to make the bargain he did ; for *Fuller* and James, as attorney for *Elias*, did not make a mutual grant of equal interests in lands, the one in exchange for the other. But on the part of *Fuller* it was a sale of his farm for

$2,500, of which $400 was to be paid by a transfer of the interest of *Elias* in the house and lot, and the remainder in money.

The argument of the respondent's attorney is, that this word "exchange" is used in the letter of attorney as in common conversation in reference to trade or traffic in chattels. Even when so used, if used with precision, it means a commutation of goods for goods; for if goods are transferred for money, it is a sale. And although sometimes, in loose conversation, persons may speak of exchanges of goods when a small part of the value is paid by one of the parties in money, yet, we apprehend, seldom or never when the *greater* part is paid in money.

We come to the conclusion that James Long had no authority from *Elias* to purchase the farm for him on the terms he did. It follows that *Fuller* had no right to receive from Nute a conveyance of the lot and house, and that he received it wrongfully, and holds it only in trust for the plaintiff.

If the proper parties were before the court, we should, on reversing the judgment of the circuit court, direct an account to be taken, and a conveyance of the house and lot to the plaintiff. But since this cause was removed into this court, *John B. Fuller* has departed this life, and his heirs are not before the court.

*By the Court.*—The judgment is reversed, and the cause remanded for further proceedings.