# CASES ARGUED AND DETERMINED

IN THE

# SUPREME COURT

OF THE

## STATE OF WISCONSIN.

STRACHAN vs. MUXLOW.

*Principal and agent. — Evidence.*

1. Where A., employed to sell property for B., receives securities for purchase money and transmits them to B., his implied authority to receive payment on the securities ceases with his possession.
2. Where the purchaser from A. gave his promissory note, payable to B. or his order, an alleged contemporaneous agreement that he should be at liberty to pay the note *before maturity* (stopping the interest), or to pay it *to* A. when due, *held* to contradict the note.
3. Would proof that, in a single instance, A. had received payment from the maker of a similar note, which had likewise been delivered to B., and that B. thereupon forwarded said note to A., and received the money from him, be sufficient to sustain a finding that B. had held A. out to the world as his agent to receive payment in such cases — especially where this single instance was unknown to the present defendant when he made his payment to A. ?

APPEAL from the Circuit Court for *La Fayette* County.

Action upon a promissory note for $100, with interest, dated at Darlington, July 17, 1865, payable in three

months, executed by defendant to plaintiff. Answer, that one Champlin was plaintiff's agent at Darlington from July 17, 1865, to February 15, 1866, and as such authorized to sell plaintiff's reaping machines at that place, and collect the money due from the vendees, whether secured by notes or otherwise; that the note sued on was given to Champlin in part payment for a reaping machine sold by him, as such agent, to defendant, on the day of its date; and that on the 20th of October, 1865, defendant paid the note to Champlin, who was fully authorized to receive the same.

On the trial it appeared that the note in question, together with another of the same date, at fifteen months, was given for one of plaintiff's reaping machines sold to defendant by Champlin as alleged in the answer. The defendant was permitted, under objection, to testify as follows: "At the time I bought the machine, I told Champlin I wanted the privilege of paying my notes at any time. He told me I could pay them at any time to him. I knew, when I signed them, that the notes were payable to *Strachan*." He further testified, under objection, that on the 20th of October, 1865, he sent money to pay the note in suit, to Champlin at Darlington, by one Colbeck, who brought back a receipt for the amount as "to apply" on said note, signed by Champlin, and told him that Champlin said the note was not in his possession, but was at Mineral Point, and he (Champlin) would send and get it, etc. Other testimony to the same effect was also received under objection. The plaintiff was called as a witness for defendant, and testified: "Champlin acted as my agent for the sale of reaping machines in the summer of 1865; he was authorized to sell, but could only collect what was paid down at the time of sale, and until he settled his agency account with me. If he took notes, he was not authorized to collect after they had once passed out of his possession. He sold machines for me to Francis Weaver, John Schwartz

Strachan vs. Muxlow.

and the defendant; but his principal business was to deliver machines for me which had been sold by other parties. I settled with him about two weeks after the date of *Muxlow's* notes; had full settlement, and took defendant's notes and placed them in the hands of Wm. T. Henry, of Mineral Point. Mr. Henry does all my collecting. I am informed that Mr. Champlin is deceased, and his estate insolvent. I did not know that he had collected the money on this note, until after his decease." Francis Weaver, above named, testified that when he bought one of plaintiff's machines from Champlin in the summer of 1865, and gave his note for it, Champlin told him that the head agent lived in Mineral Point. "When the note became due, I went to Champlin's office in Darlington to pay it. He said the note was in Mineral Point, and I could pay it to him, and he would send and get the note, and I could have it the next time I came to town. I paid the money to him, and took his receipt for it; and the next time I went to town he gave me the note. I do not know who the note was payable to when I signed it; think there was no payee, but the payee's name was inserted afterward." The note referred to by the witness was presented to the court, and found to be payable to the plaintiff. John Schwartz, above mentioned, testified that when he bought his reaping machine of Champlin in the summer of 1865, he gave two promissory notes payable to the plaintiff; that when the first became due, he went to Champlin to pay it; that the latter said the note was in Mineral Point, and if witness would pay the money to him, he would give a receipt for it, and would send for the note, etc.; that witness refused to leave the money, but told Champlin if he would get the note, he (witness) would pay it; and that the next time he went to Darlington he paid Champlin the amount due, and received from him the note.

After defendant had introduced some evidence, which need not be stated here, the court instructed the jury,

*inter alia,* as follows: "If Champlin was in the habit of collecting the amount due upon notes given for machines sold by him, after he had sent the notes to Henry & Smith [Wm. T. Henry], and the plaintiff or Henry & Smith [Wm. T. Henry] knew of this conduct on Champlin's part, unless defendant was notified not to pay Champlin, the payment to the latter is valid, and plaintiff cannot recover." Plaintiff excepted to the whole charge, and "particularly to that part thereof which is adverse to him."

Verdict for defendant; new trial denied; and plaintiff appealed from a judgment on the verdict.

*Henry & Smith,* for appellant:

1. If an agent, selling property for his principal, takes a note payable to the latter, and parts with the possession of the note, his authority to collect it is at an end. The inference of authority in him to receive payment is derived entirely from his possession of the note. Dunlap's Paley, 274; *Hen v. Caisby,* 1 Ch. Cases, 93; *Gerard v. Baker,* id. 94; 2 Eq. Cases Abridged, 709; *Wolstenholm v. Davies,* Freem. 289; 2 Esp. 510; Story on Agency, § 98; 1 Salk. 157; 7 Mass. 483; 7 Wis. 620; 2 Kent (6th ed.), 621, and cases from Sandf. Ch. R. there cited in note. 2. An agent has no authority to vary the terms of a written contract by receiving payment in any other mode than that indicated therein. Dunlap's Paley, 280, 290; *Campbell v. Hassel,* 1 Starkie, 233; Story on Agency, § 99; *Ward v. Evans,* 2 Ld. Raym. 930; 2 Salk. 442. 3. Defendant not having shown that when he paid his note to Champlin he had any knowledge that Weaver and Schwartz had paid theirs to him, their testimony was irrelevant. 4. Defendant, by leaving his money in Champlin's hands, and taking his individual receipt for it, constituted Champlin his agent; and no person can be agent for both vendor and vendee in the same transaction.

*P. A. Orton, Jr.*, for respondent:

The testimony as to an agreement between defendant and Champlin at the time of the sale, about the manner of payment of the note, was properly admitted. Its effect was not to alter or contradict the note. *Jones v. Keyes*, 16 Wis. 565; *Racine County Bank v. Keep*, 13 id. 212. The note is silent as to the place of payment, and it is perfectly consistent therewith that payment should be made to the agent at Darlington, and not to the plaintiff, who might be at a distant place. Plaintiff did not testify that he was not informed by Champlin of the entire contract. It is not to be presumed that the agent withheld from his principal knowledge of a portion of the agreement. Story on Agency, § 250; *Fargo v. Ladd*, 6 Wis. 117; *Paine v. Wilcox*, 16 id. 203. 2. If there was any error in the instructions, there was no sufficient exception thereto, if any part of the instructions was correct. *M. & Ch. R. R. Co. v. Hunter*, 11 Wis. 168; 15 id. 257; 16 id. 225; 17 id. 665. 3. As to the effect of prior transactions, like those in the cases of Weaver and Schwartz, to establish an implied authority, counsel cited *Lachner v. Salomon*, 9 Wis. 132; 1 Am. L. C. 567; Story on Agency, 109; Dunlap's Paley, 161. It is immaterial that the receipt was signed by the agent in his own name, and not in that of the principal. It shows that the money was received "to apply on his (defendant's) reaper note." Story on Agency, 160a; *Lerned v. Johns*, 9 Allen, 419.

PAINE, J. The defendant's counsel does not contest the proposition that, where an agent employed to sell property receives securities and transmits them to his principal, his implied authority to receive payment on those securities ceases with his possession; and, if the debtor seeks to bind the principal by a payment to such agent, he must prove something beyond the mere original agency to sell the property and receive and

transmit the securities. The defendant attempted to comply with this requirement, by proving that it was a part of the agreement, at the time the note sued on was given, that he might pay it at any time to Champlin, at Darlington. And he was allowed to give evidence, under objection, of a parol agreement or conversation between him and Champlin to that effect, at the time of the giving of the note. The defendant said that he told Champlin he wanted the privilege of paying his notes at any time, and that Champlin told him they might be paid at any time to him.

If such a conversation is to be understood as constituting a part of, or condition to, the agreement, then the evidence was inadmissible, for the reason that it contradicted the notes. They were payable to the plaintiff, or his order, one in three and the other in fifteen months, with interest. I take it for granted that the defendant, in stipulating for the privilege of paying his notes at any time, meant to secure the right to stop the interest, by paying it to the time of the payment. And this was in direct contravention of the right secured to the plaintiff by the written contracts, to have his debt at interest for the times specified in the notes. However, upon this branch of the parol agreement, no question arises, as there was no payment before maturity.

But the other branch of it was equally in conflict with the notes. By them the defendant expressly promised to pay to *John Strachan*, or his order. By the parol agreement, he seeks to authorize himself to pay to somebody else. In saying this, I do not overlook the fact that a payment to an authorized agent of *Strachan* would be a payment to him within the meaning of the note. But the plaintiff testified that, before this payment, Champlin's authority had ceased. Certainly it might have ceased. It might be revoked at any time. And this the defendant was bound to know. The right, therefore, to pay a note drawn payable to a particular person

Strachan vs. Muxlow.

or order to some other person, without reference to the question whether such other should be the agent of the payee at the time, is a material addition to, and contradiction of, the note itself. And it cannot be established by a contemporaneous parol agreement.

The defendant also sought to show a course of dealing by which the plaintiff had held Champlin out to the world as authorized to receive payment on his notes, whether they were actually in Champlin's possession or not. Only two instances were relied on. But the case of Schwartz has no tendency to support such a conclusion; for he refused to pay to Champlin until the latter got possession of the note. It leaves, therefore, but a single instance in which money due the plaintiff on a note was deposited with Champlin by the maker, and the note was afterward procured by Champlin from the plaintiff and delivered. And it did not appear that this fact ever came to the knowledge of the defendant before making his payment. It is very doubtful whether a verdict for the defendant ought to be sustained upon such evidence. It is not clear that the transaction itself imported any recognition of Champlin's authority to bind the plaintiff by the receipt of money prior to his actually getting the note. Suppose one person owing another on a note should deposit the amount in a bank, with directions to inform the holder and procure the note from him, paying the money upon it. If the holder, on receiving the information from the bank, should forward his note and receive the money, would that constitute the bank his agent, so that if any other debtor should pay his note to the bank he would be discharged, though the creditor never parted with the security, and the bank failed without paying over the money? It is at least extremely doubtful. The question is, whether, in any such case, the debtor does not make the depositary his agent until the security comes to his hands? After that, he might be the agent of the credi-

tor for the purpose of delivering the security and forwarding the money.

But even if the transaction did import a recognition of Champlin's authority to receive the money, it is doubtful whether a single act not known to the defendant would constitute such a "holding out to the world" as would relieve the defendant from proving actual authority.

But as the evidence may be different upon another trial, we shall not express any final opinion upon these points.

For the admission of the improper evidence the judgment must be reversed, and a *venire de novo* awarded.

*By the Court.*—Ordered accordingly.