KASSON and another vs. NOLTNER.

PRINCIPAL AND AGENT. *(1) Rule as to responsibility of principal for agent's act. (2) Case stated.*
PROMISSORY NOTE. *(3) Stipulation in note as to nonallowance of unindorsed payments.*
DEPOSITION. *(4) When objections to interrogatories must be taken.*
REVERSAL OF JUDGMENT: *(5) For harmless error.*

1. A principal is responsible for the act of his agent when he has either given the agent authority to do the act, or justified the party dealing with the agent in believing that the latter had such authority.
2. Upon the evidence in this case (for which see the opinion), the question whether defendant had good reason to believe from his knowledge of the dealings between plaintiffs and one who was their agent in disposing of sewing machines, that the latter was authorized to collect at Madison the amount due on defendant's note to plaintiffs, while such note was in plaintiffs' hands in Milwaukee, was properly left to the jury.
3. A stipulation in the note that no credit should be allowed on it unless in-dorsed upon it by the payees, will not prevent the allowance, in an ac-tion upon the note, of any authorized payment actually made, but not indorsed.

4. Objections to interrogatories, made at the taking of a deposition, furnish no ground of exception, unless again made to the court when the deposition is read.

5. A judgment will not be reversed for errors in the admission of evidence, by which the appellant could not have been injured.

APPEAL from the Circuit Court for *Dane* County.

Action upon a promissory note given by defendant to plaintiffs, for $85 and ten per cent. interest, dated December 15, 1873, due eighteen months after date, and payable to the order of plaintiffs "at the Singer office, Madison, Wis." The note contains the following stipulation: "No credit allowed on this note unless indorsed on the back by the payee." The defendant in his answer admits the execution of the note, and alleges as a defense that it was fully paid and satisfied before the commencement of the action.

The action was brought before a justice of the peace, and the defendant appealed to the circuit court from a judgment rendered against him by the justice.

The testimony on the trial in the circuit court tends to prove the following facts: The plaintiffs were dealers in Singer's sewing machines, having their office in Milwaukee; and one Clark was their agent in Dane and some other counties for the sale of such machines, having one of his offices at Madison. R. H. Hewitt was the agent and confidential business man of Clark. There was a sign in front of the Madison office, on which were the words "Singer Sewing Machines — H. N. Clark, Agent." The defendant purchased a machine of Clark, and gave therefor the note in suit. Afterwards the defendant was employed by Clark to sell machines. His account with Clark was kept in a pass-book furnished by the latter, the entries in which were made by Clark or his agents. In November, 1874, Mr. Hewitt posted the defendant's pass-book, and charged him therein with the amount of the note, naming it a lease, and informed the defendant that the note was in Milwaukee, but assured him that he would get it for him in

a few days. Clark gave the defendant the same assurance. There was still a balance due the defendant for his services, after deducting the amount of the note.

Clark was accustomed to sell machines on credit, taking notes therefor payable at the Singer office, Madison, some of which were made payable to himself, and others to the plaintiffs, and to forward such notes to the plaintiffs at Milwaukee. He also disposed of machines on contracts, called leases, in which the price was made payable in installments. These contracts or leases were also sent to the plaintiffs, but the installments were collected by Clark as they became due. Clark also sold machines for cash, but the most of those disposed of by him were on leases. More were sold for notes than for cash. The leases were usually made in the name of the plaintiffs.

The authority of Clark to receive payment on cash sales and to collect installments due or to become due on leases, does not seem to be denied. The plaintiffs in their testimony admit that Clark was also authorized to receive payment on notes indorsed or guarantied by him. Mr. Hewitt was engaged in traveling through the country collecting money on both notes and leases, for which he gave Clark's receipts. He remitted his collections to Clark. The plaintiffs sometimes sent their notes to Clark, but more usually to the First National Bank of Madison, for collection. The wages of Clark's employees in the business of his agency were habitually paid out of the moneys received at the office in the course of the business, from sales and collections. The business had been carried on in the manner above stated one or two years, when the note in suit was charged up to the defendant and applied towards the payment for his services.

The testimony further tends to show that Clark was accustomed to receive payment at his office in Madison on notes given for machines, both before and after the same became due, and to remit such collections to the plaintiffs to be in-

dorsed on the proper notes. There is sufficient testimony to warrant the jury in finding that plaintiffs and defendant had full knowledge of the general course of the business as above stated; and there seems to be no testimony tending to show that defendant knew that Clark had no authority to collect the note in suit.

Some of the alleged facts which the testimony tends to establish as above stated, are controverted by the testimony on plaintiffs' behalf; but it is unnecessary to make a specific statement of the evidence on those points.

The instructions to the jury are sufficiently stated in the opinion.

Defendant had a verdict and judgment; and plaintiffs appealed from the judgment.

For the appellants, there was a brief by *Welch & Botkin*, with *J. P. Towne*, of counsel, and oral argument by *Mr. Welch*. They contended, 1. That it was clearly established by the evidence, that plaintiffs *sold* their machines to Clark at a discount, and upon credit; that Clark then sold or leased the machines, the leases being payable monthly at Clark's office in Madison; that for the machines sold he took notes, some payable to the plaintiffs, and others payable to himself; that he paid for the machines partly in money as he collected it, and partly in notes running to the plaintiffs, and partly in notes running to himself, but by him indorsed to the plaintiffs; and that when such notes were sent to the latter, Clark's control of them ceased. 2. That even if Clark was plaintiffs' general agent for the sale of machines, he had no right to use in payment of his private debt a note belonging to the plaintiffs, made payable to their order, not due, and in their possession. *Strachan v. Muxlow*, 24 Wis., 24–28. 3. That the case is made still stronger by the fact that the note executed by defendant stated on its face that no credit would be allowed on it " unless indorsed by the payee." 4. That the instructions were erroneous in charging as to the effect of facts of which

there was no sufficient evidence for the jury; and in failing to discriminate between a *general authority* as agent to sell machines, take and collect leases, etc., and a *special authority* to collect notes held by and belonging to the plaintiffs.

For the respondent, there was a brief by *Vilas & Bryant*, and oral argument by *Mr. Vilas*. They contended that the business of Clark's office was in all respects conducted as an agency for the plaintiffs, for the sale and lease of machines, and the collection of payments on leases, and of notes given on sales, including the receipt of payments offered to be made on notes not yet due, and still in plaintiffs' hands; that the jury were justified in finding that plaintiffs had sanctioned a course of business at the Madison office which would lead persons dealing there, including the defendant, to suppose that Clark had authority to receive such payments; that in such a case, the principal is as much bound as if the agent in fact possessed the authority; that in the case of a general agent, especially, his authority may be regarded by the public as measured by the usual extent of his general employment (1 Parsons on Con., 43); that a private understanding between the principal and agent, of a contrary character, would make no difference *( Williams Mower & Reaper Co. v. Raynor*, 38 Wis., 119); and that there is nothing in *Strachan v. Muxlow* inconsistent with this view.

Lyon, J.  1. The rule of law which controls the decision of this case is, that "a principal is responsible, either when he has given to an agent sufficient authority, or when he justifies a party dealing with his agent in believing that he has given to the agent his authority." This rule, says Professor Parsons, may be called the foundation of the law of agency. 1. Pars. on Con., 44. And Judge Story, in his commentaries on the law of agency, lays down the same rule more elaborately, and says it is founded in the maxim of natural justice, that he who has, although innocently, enabled any person to

do an act which might be injurious to himself or to another innocent party, shall himself suffer the injury, rather than the innocent party who has placed confidence in him. § 127.

This rule was fully recognized and applied by the learned circuit judge in his charge to the jury, and is, so to speak, the key-note of the charge. The rule was stated in different forms, but always with clearness and accuracy, and nothing to the contrary appears in the charge. He also, at the request of counsel for the plaintiffs, gave the jury the rule of *Strachan v. Muxlow*, 24 Wis., 21.

Three instructions proposed on behalf of the plaintiffs were refused. Two of these contained a direction to the jury to find for the plaintiffs; and the third is to the effect that, in order to find that Clark had a right to apply his indebtedness to the defendant in payment of the note in suit, they must find that the plaintiffs are liable for the balance of Clark's indebtedness to the defendant after deducting the amount of the note. The last instruction was properly refused, for it contains no correct test of the authority or apparent authority of Clark to collect the note; and the other two instructions were properly refused if there was any evidence of Clark's authority to collect the note, which ought to have been submitted to the jury.

It is quite unnecessary to state the instructions more fully. Enough has been stated to show that none of them are erroneous if there was any evidence to go to the jury on the question whether, from the course of dealing between Clark and the plaintiffs, known to the defendant, the latter had good reason to believe that Clark had authority to collect the note. We regard the transaction between Clark (or his agent Hewitt) and the defendant, in respect to the note, as equivalent to the collection thereof.

Without recapitulating the propositions of fact contained in the statement of the case, which the evidence tends to prove, we have no difficulty in holding that there is evidence

tending to show that the defendant, from his knowledge of such course of business, had good reason so to believe. Hence, that question was properly submitted to the jury, and we cannot review their finding upon it.

2. The learned counsel for the plaintiffs places some reliance upon the clause in the note that no credit shall be allowed unless indorsed on the note by the payee. We think the clause is of no importance in the case. Authorized payments on the note must be allowed by some process, and it would be an unnecessary circumlocution of action to drive the maker into a court of equity to compel the payee to make the proper indorsement of payments, before they can be allowed in an action on the note. The more simple and reasonable process is to allow them in a suit upon the note, even though not indorsed thereon by the payee. To do so will be no undue strain, we think, upon the functions of a court of law.

3. It only remains to consider briefly two exceptions to the rulings of the court overruling objections made on behalf of the plaintiffs to the admission of testimony. The witness was a former employee of Clark in the Madison agency, and the testimony to which the exceptions relate is as follows: "Q. Did Mr. Clark, while in the Singer office at Madison, and in charge of it, say anything to you or in your hearing in respect to the payment of the note in dispute? A. * * * I told Clark that defendant wanted his note. He said defendant would have to wait, as he had not then the money to send in and get the note. Q. Do you know what Mr. Hewitt's connection with the agency here in Madison was? A. Clark informed me that he had employed Hewitt as collector and book-keeper." This testimony, so far as it is of any importance in the case, relates to facts abundantly proved by other and competent evidence, and concerning which there is no dispute. Should it be conceded that it was error to admit the testimony, it is not possible that the plaintiffs were injured

thereby, and hence, the error will not work a reversal of the judgment.

Error is also assigned upon the admission of the answer to an interrogatory contained in' the deposition of a witness, taken at the instance of the defendant, and read on the trial. The interrogatory was objected to at the taking of the deposition, but the objection was not made to the court when the deposition was read. There is, therefore, no exception to support this assignment of error. *Hill v. Sherwood*, 3 Wis., 343. See also Judge Dixon's note to *Sayles v. Stewart*, 5 id., 13.

*By the Court.*— The judgment of the circuit court is affirmed.