BENTLEY vs. DOGGETT and others.

*January 13 — February 8, 1881.*

AGENCY: CONTRACTS. *Liability of merchants to third persons for expenses of traveling salesmen.*

O. was a traveling agent of defendants, a Chicago mercantile house, selling goods for them by sample and collecting their bills, and was paid a fixed salary, and his traveling expenses; and while so engaged he hired horses

Bentley vs. Doggett and others.

and carriages of plaintiff, the keeper of a livery stable in this state, to take him and the trunks used in his business from place to place as required by such business, but did not pay therefor. Plaintiff did not demand payment from defendants until the commencement of this suit, and meanwhile they had settled with O. and paid him for all his traveling expenses, including the expense of such horses, etc., without knowledge that he had failed to pay for the same. Plaintiff testified that (though the charges on his book were against O. alone) he furnished the horses, etc., on the credit of the defendants, and the jury found specially that such was the fact. The court rejected evidence offered by defendants to show a general custom among commercial houses *in Chicago*, in sending out traveling sale agents, to furnish them with sufficient money to pay all their hotel bills and traveling and other expenses, and not to permit them in any instance to pledge the credit of their principals therefor; and it refused to submit to the jury the questions whether defendants had furnished O. with sufficient money to pay such expenses, and whether they had given him any authority to obtain livery on credit. On defendant's appeal from a judgment against them: *Held*, no error.

APPEAL from the Circuit Court for *Grant* County.

Action to recover $50, with interest, upon an account for livery furnished in February and May, 1875, to one I. C. Otis, a servant and agent of the defendants, which livery, it is alleged in the complaint, "was used and employed by the said I. C. Otis in and about the business of the said defendants, and at their special instance and request." The account attached to the complaint was made out against Otis. The facts shown by the evidence, and the exceptions relied upon by the defendants, are thus stated by Mr. Justice TAYLOR:

"The plaintiff kept a livery stable in Platteville, in this state, and in February and May, 1875, he let one I. C. Otis have horses and carriages to transport said Otis and his trunks from place to place, and the value of the use of the horses and carriages was the sum of $50, of which an itemized account is given. Said Otis was at the time in the employ of the defendants, a firm of merchants in the city of Chicago, and was traveling for them, selling goods by sample and collecting bills for goods sold by him for said firm; the livery was furnished to Otis to transact his legitimate business for said firm; such

livery was necessary and convenient for the transaction of the business of said Otis; and he had failed to pay therefor. The evidence also shows that Otis was paid a fixed salary by the defendants, and his expenses whilst traveling for them.

" On the trial, the defendants offered to prove that they always furnished Otis, as they did all their other traveling salesmen, sufficient money to pay all their expenses; that he was so furnished with sufficient money at the time this bill was made; that he had no authority to incur any liability whatever against the firm; and that subsequently to the making of this bill by Otis, and without any knowledge that the plaintiff had any such bill against them or Otis, they had settled with said Otis, and allowed him in such settlement the amount of plaintiff's bill, as money expended by him in their employment. The evidence further shows that the charges made on the plaintiff's books for said bill were all made against I. C. Otis, and not against these defendants, and that no demand was made of the defendants for the payment of the bill until after this action was commenced. The defendants offered to prove on the trial that it is a general custom, and was when this bill was made, among the commercial houses in the city of Chicago, in sending out traveling agents to sell goods for their employers, to furnish them with sufficient money to pay all their hotel bills and traveling and other expenses, and that in no instance are such agents permitted to pledge the credit of their principals or incur any liability against their employers. This evidence was objected to by the plaintiff, and excluded.

" Upon the close of the evidence the defendants requested the court to submit the following questions to the jury, in the way of a special verdict: (1) Was the credit given by the plaintiff to the defendants *Doggett, Bassett & Hills*, or was it given to I. C. Otis, at the time the livery was furnished him? (2) Did or did not the defendants furnish I. C. Otis with sufficient money with which to pay his traveling expenses at the time

and prior to his starting out on these trips to sell the goods of the defendants? (3) Did or did not the defendants give any authority to I. C. Otis to obtain livery on credit? The court declined to submit to the jury the second and third questions proposed, and submitted the first; and in answer to that question the jury found as follows: 'We, the jury, find that the livery was furnished upon the credit of *Doggett, Bassett & Hills.'*

" There was no question made as to the amount of the plaintiff's bill, nor as to the facts that it was unpaid, and that the livery was used by I. C. Otis in the pursuit of his business as a commercial agent in the employ of the defendants. The defendants offered to show upon the trial that they had furnished Otis with sufficient money to pay all his expenses and livery bills, and that he had no authority and was forbidden by them to pledge the credit of the defendants for such bills; but they did not offer to show that these facts were known to the plaintiff when he furnished the livery to their agent, Otis. The court below held that, a knowledge of these restrictions upon the power of their agent not having been brought home to the plaintiff at the time he furnished the livery to the agent, Otis, they were not material to the issue, and should be disregarded by the jury in making up their verdict; and it entirely withdrew them from their consideration, by refusing to submit the second and third questions propounded by the defendant for a special verdict."

The jury found specially that the livery was furnished upon the credit of defendants, and also rendered a general verdict in favor of the plaintiff; defendants' motion for a new trial was denied; and they appealed from a judgment on the verdict.

For the appellants there was a brief by *W. H. Beebe*, their attorney, with *A. R. Bushnell*, of counsel, and oral argument by *Mr. Beebe:*

1. The testimony offered as to the custom of commercial houses, was competent. A general agency does not import un-

qualified authority, but only such as is derived from the general usage in the employment, and the implied authority of a general selling agent is the same as that of other general selling agents. Story on Agency, §§ 19, 60; *Upton v. Suffolk Co. Mills*, 11 Cush., 586. 2. The court erred in not directing a sufficient special verdict. R. S., secs. 2857, 2858; Laws of 1875, ch. 21; Laws of 1874, ch. 94. The second and third questions proposed by the defendants should have been submitted to the jury, as involving material contested issues. 3. The court erred in its instructions to the jury. A general agent is not authorized to pledge his employers' credit to carry on the business of the employment, unless there is something necessarily implying such authority. And in no case may he do so, where the employer has furnished him with ready money for the purpose. Dunlap's Paley on Agency, 162–166. 4. The verdict is contrary to law and the evidence. One granting credit must elect at the outset to whom he will grant it. He cannot trust one person for more than a year, and then, upon failure of payment, make a new contract by charging the account to another.

*William E. Carter*, for the respondent:

1. The charge of the livery, upon the books of the plaintiff, to Otis, might be explained. *Champion v. Doty*, 31 Wis., 190. 2. The evidence offered of the custom among commercial houses was properly excluded. It failed to show that the plaintiff knew of such custom, or that it was so general and notorious that knowledge on his part would be presumed. *Lamb v. Klaus*, 30 Wis., 94; *Scott v. Whitney*, 41 id., 504; *Power v. Kane*, 5 id., 265; *Hall v. Storrs*, 7 id., 253; *Marshall v. Am. Exp. Co.*, id., 1; *Keogh v. Daniell*, 12 id., 163; *Lee v. Merrick*, 8 id., 229; *Hinton v. Coleman*, 45 id., 165. 3. The court is not obliged to submit to the jury the precise questions proposed by counsel on either side. R. S., sec. 2858; *Davis v. Farmington*, 42 Wis., 425; *Carroll v. Bohan*, 43 id., 218; *Ward v. Busack*, 46 id., 407. The second and third

questions proposed by defendants were obviously immaterial. It made no difference how much money they gave Otis, nor whether he had authority from them to obtain credit, unless notice of the facts was brought home to the plaintiff. 4. There was no error in the instructions given. Dunlap's Paley on Agency, 162, n. 1, 201, n. 1, 208, sec. 4; Smith's Mercantile Law, 116; Smith on M. & S., 125; *Hern v. Nichols,* 1 Salk., 289; *Baring v. Corrie,* 2 B. & A., 143; *Fitzherbert v. Mather,* 1 Durnf. & E., 16; *Kasson v. Noltner,* 43 Wis., 646; *Wilcox v. Routh,* 9 Sm. & M., 476; *Walker v. Skipwith,* Meigs, 502; *Tomlinson v. Collett,* 3 Blackf., 436; 1 Parsons on Con., 44.

TAYLOR, J. It is clearly shown by the evidence that it was not only convenient but necessary for the agent, Otis, to have the use of horses and carriages in order to transact the business he was employed to transact; and the only question is, whether he could bind his principals by hiring them upon their credit. Otis was the agent of the defendants for the purpose of traveling about the country with samples of their merchandise, contained in trunks, which rendered it necessary to have a team and carriage to transport him and his samples from place to place, with full authority to sell their merchandise by sample to customers, and direct the same to be delivered according to his orders. The defendants not having furnished their agent the necessary teams and carriages for transportation, he clearly had the right to hire the same and pay their hire out of the funds in his hands belonging to them. This is admitted by all parties. The real question is, Can the agent, having the money of his principals in his possession for the purpose of paying such hire, by neglecting to pay for it, charge them with the payment to the party furnishing the same, such party being ignorant at the time of furnishing the same that the agent was furnished by his principals with money and forbidden to pledge their credit for the same?

There can be no question that, from the nature of the busi-

ness required to be done by their agent, the defendants held out to those who might have occasion to deal with him, that he had the right to contract for the use of teams and carriages necessary and convenient for doing such business, in the name of his principals, if he saw fit, in the way such service is usually contracted for; and we may, perhaps, take judicial notice that such service is usually contracted for, payment to be made after the service is performed. It would seem to follow that, as the agent had the power to bind his principals by a contract for such service, to be paid for in the usual way, if he neglects or refuses to pay for the same after the service is performed, the principals must pay. The fault of the agent in not paying out of the money of his principals in his hands cannot deprive the party furnishing the service of the right to enforce the contract against them, he being ignorant of the restricted authority of the agent. If the party furnishing the service knew that the agent had been furnished by his principal with the money to pay for the service, and had been forbidden to pledge the credit of his principals for such service, he would be in a different position. Under such circumstances, if he furnished the service to the agent, he would be held to have furnished it upon the sole credit of the agent, and he would be compelled to look to the agent alone for his pay. We think the rule above stated as governing the case is fully sustained by the fundamental principles of law which govern and limit the powers of agents to bind their principals when dealing with third persons. Judge Story, in his work on Agency, § 127, says: "The principal is bound by all acts of his agent within the scope of the authority which he holds him out to the world to possess, although he may have given him more limited private instructions unknown to the persons dealing with him." In section 133 he says: "So far as an agent, whether he is a general or special agent, is in any case held out to the public at large, or to third persons dealing with him, as competent to contract for and bind the principal, the latter will be bound

by the acts of the agent, notwithstanding. he may have deviated from his secret instructions." And again, in section 73, in speaking of the power of an agent acting under a written authority, he says: "In each case the agent is apparently clothed with full authority to use all such usual and appropriate means, unless upon the face of. the instrument a more restrictive authority is given, or must be inferred to exist. In each case, therefore, as to third persons innocently dealing with his agent, the principal ought equally to be bound by acts of the agent executing such authority by any of those means, although he may have given to the agent separate private and secret instructions of a more limited nature, or the agent may be secretly acting in violation of his duty." In the case of *Pickering v. Busk*, 15 East, 38–43, Lord ELLENBOROUGH, speaking of the power of an agent to bind his principal, says: "It is clear that he may bind his principal within the limits of the authority with which he has been apparently clothed by the principal in respect to the subject-matter; and there would be no safety in mercantile transactions if he could not." These general principles have been illustrated and applied by this and other courts in the following cases: *Young v. Wright*, 4 Wis., 144; *Whitney v. State Bank*, 7 Wis., 620; *Long v. Fuller*, 21 Wis., 121; *Houghton v. Bank*, 26 Wis., 663; *Kasson v. Noltner*, 43 Wis., 646; *Smith v. Tracy*, 36 N. Y., 79; *Andrews v. Kneeland*, 6 Cow., 354.

In this view of the case it was immaterial what the orders of the principal were to the agent, or that he furnished him money to pay these charges, so long as the person furnishing the service was in ignorance of such facts. In order to relieve himself from liability, the principal was bound to show that the plaintiff had knowledge of the restrictions placed upon his agent, or that the custom to limit the powers of agents of this kind was so universal that the plaintiff must be presumed to have knowledge of such custom. Under the decisions of this court, the custom offered to be proved was not sufficiently uni-

versal to charge the plaintiff with notice thereof. See *Scott v. Whitney*, 41 Wis., 504, and the cases cited in the decision, and *Hinton v. Coleman*, 45 Wis., 165. And there being no proof of actual notice to the plaintiff, the only issue left in the case, which was not clearly disposed of in favor of the plaintiff by the evidence, was submitted to the jury, viz.: whether the credit was, in fact, given by the plaintiff to the agent or to the firm. The jury found against the defendants upon this issue. From reading the evidence in the record, I should have been better pleased with a different verdict upon this issue; but as there is some evidence to support the verdict, and as this court has held substantially in *Champion v. Doty*, 31 Wis., 190, that charging the service in the plaintiff's books to the agent is not conclusive that the credit was given to him, but might be explained, it was the province of the jury to say whether the explanation given by the plaintiff was reasonable and satisfactory. We cannot, therefore, set aside the verdict as against the evidence.

*By the Court.*— The judgment of the circuit court is affirmed.