LORTON & CO. v. RUSSELL & HOLMES.

[FILED SEPTEMBER 17, 1889.]

Principal and Agent. A principal is bound by the acts of his agent to the extent of the apparent authority conferred on him. *Webster v. Wray*, 17 Neb., 579.

ERROR to the district court for Johnson county. Tried below before BROADY, J.

*John C. Watson*, for plaintiff in error:

Agency to receive a check payable to order, implies no authority to endorse it in the principal's name. (*Dodge v. Bank*, 20 O. S., 234 [30 O. S., 1].) To justify a refusal to pay money on the ground of former payment, bank must show that its payee was authorized to receive payment. (*Citizens' Bank v. Importers', etc., Bank*, Ry. & Corp., Law Journal, Vol. IV, No. 23, p. 540.) The depositions were immaterial and irrelevant.

*S. P. Davidson*, for defendant in error:

The case of *Dodge v. Bank* (*supra*) is not in point, as the pretended payee there had no business relations with the real payee. When the agent's acts affect innocent third parties, the principal will be bound to the extent of the apparent authority conferred. (*Webster v. Wray*, 17 Neb., 579, 581.) Where one of two innocent parties must suffer, and one of them has enabled an injurious act to be done, it should be the latter. (*Kasson v. Noltner*, 43 Wis., 650–1; Story on Agency, sec. 127.) The principal may be bound by a mere holding out of authority, even though proved by circumstantial evidence. (*Bouck v. Enos*, 61 Wis., 663–4.) As to the question of general agency, Story on Agency, sec. 17; Edwards on Bills and Notes, sec. 81; *Lumber Co. v. Stone*, 19 Neb., 402–5–6.)

COBB, J.

This cause is brought on error for review of the adverse decision of the district court of Johnson county.

The original action was by Lorton & Co., merchants at Nebraska City, against Russell & Holmes, bankers at Tecumseh, to recover from defendants the amount of three separate bank checks payable to plaintiffs, or order, of $217.39, and interest at ten per cent per annum from January 26, 1886. It is alleged that the checks were received into the hands of a traveling salesman of the plaintiffs, from their customers, in the line of his employment, fraudulently indorsed and cashed by him, and wrongfully paid by the defendants; that without the knowledge or consent of the plaintiffs, the defendants, on the 30th of December, 1885, out of the funds of the drawers of the checks, wrongfully paid to William Bancroft, a clerk of the plaintiffs, who had received the checks in payment of bills of merchandise entrusted to him for collection against the drawers of the checks; that Bancroft was not entitled to collect the

money on the checks, but forged the plaintiffs' name thereon for that purpose, of all which the defendants had due notice at the time of payment to Bancroft; and that on the 26th of January, 1886, payment of the checks was demanded by plaintiffs and refused by the defendants.

In their answer the defendants deny that there is due the plaintiffs on any or all of said checks any sum whatever; and further deny that they paid either of the checks without the consent of the plaintiffs, or that the plaintiffs' name was forged upon the checks, or that defendants had any notice of such forgery, or that defendants wrongfully paid the checks to Bancroft.

The defendants set up that at all the times mentioned by the plaintiffs, and for more than one year prior thereto, plaintiffs were wholesale merchants, that they sold merchandise to the merchants of Tecumseh and those of other towns in Johnson and other counties in Nebraska; that the drawers of the checks were merchants of Tecumseh who had large dealings with, and bought large quantities of goods from, the plaintiffs; that William Bancroft during all that time was the agent of the plaintiffs, through whom they sold the goods to the merchants, and who was authorized to collect the bills for the goods so sold, and as such agent had before the times mentioned collected for the plaintiffs a large number of such bills; that it was the plaintiffs' custom to collect bills through such agent; that in pursuance of such custom the agent repeatedly received checks payable to the plaintiffs' order, in payment of such bills upon defendants' and other banks, and then indorsed the plaintiffs' name thereon, and thus collected and received payment of checks for the plaintiffs, all of which was repeatedly ratified by the plaintiffs; and that by such conduct and custom of the plaintiff, defendants were led and induced to believe, and did believe, that Bancroft was authorized to endorse and collect the checks; that during all of said time the plaintiffs employed no other means of

collecting such checks than through the agency of, and indorsement of the same by, Bancroft; that the three checks mentioned were presented and indorsed by Bancroft in accordance with said custom and in pursuance of said authority, and without defendants having any notice or knowledge to the contrary; and for these reasons defendants paid the checks.

The reply of the plaintiffs is a general denial of the answer.

There was a trial to the court, a jury being waived, and a finding in favor of the defendants.

The plaintiffs moved for a new trial on the grounds:

1. The finding of the court is contrary to the law and evidence.

2. The court erred in admitting in evidence the depositions excepted to by the plaintiffs.

This motion was overruled and judgment entered on the finding in favor of defendants. The plaintiffs prosecute their petition in error on the same grounds of their motion for a new trial in the court below.

The plaintiffs were wholesale merchants doing business at Nebraska City, and the defendants were bankers at Tecumseh. These places are about forty or forty-five miles distant from each other by the country roads and about sixty miles by the railroad.

One Bancroft was employed by the plaintiffs as a salesman, in the capacity of traveling man, in their business. He had been in their employment as such for a year and a half. His usual traveling territory comprised Tecumseh, and all the towns from Nebraska City to Valley on the Burlington & Missouri River railroad line, including all the towns, with several on the Missouri Pacific line, including Howe, Stella, and Crab Orchard. He was accustomed to go over this route on an average trip of once in two weeks, soliciting orders, and collecting bills of sales to customers on each trip. He exercised general authority in

the collection of bills for the plaintiffs in their business at Tecumseh and elsewhere on the route; and was accustomed in the collection of bills to take checks on the banks at Tecumseh and at other points. Such checks payable to the plaintiffs, or order, he habitually indorsed in the plaintiffs' name, presented them for payment at the bank, sometimes receiving cash in payment, and sometimes exchange payable to plaintiffs, but at other times remitting the checks directly to his employers without cashing them.

From the testimony of Robert Payne, of the plaintiffs' firm, it would seem that the authority of Bancroft, as an agent and collector, rested in the custom and circumstances of their business, without having been expressed and defined by the plaintiffs to their salesmen; and no notice was ever given by the plaintiffs to defendants, or to other business men, on Bancroft's route, as to the extent or limit of his authority to bind the plaintiffs as an agent and representative in the transaction of their mercantile sales and collections other than that indicated by the character of his employment, and the manner in which he conducted it.

On the 29th and 30th of December, 1885, Bancroft was at Tecumseh, in pursuance of his employment as salesman and collector for plaintiffs, and had with him, which he was authorized to collect, accounts for merchandise against Wilson and Ellsworth, L. S. Parker, and Kyle & Parker, merchants of that place. Upon these accounts he collected of Wilson and Ellsworth, $25.97; of L. S. Parker, $160.69; and of Kyle & Parker, $30.83.

These sums were paid to him by the parties respectively by checks on the defendants, payable to the plaintiffs. The checks he took to the banking house of defendants, indorsed them severally with the names of the plaintiffs, presented them for payment, and they were severally paid in money by the defendants. The money was embezzled by Bancroft; and for the amount the plaintiffs bring suit.

It is the plaintiffs' contention that, while Bancroft had

implied authority to collect accounts from their customers, and to receive payment in money or checks, yet, having received checks, he had no authority to cash the checks or convert them into money.

It will be observed that Payne, a member of the plaintiffs' firm, on the stand as a witness, admitted, while claiming that no express authority had been given Bancroft to convert the checks, given him in payment of accounts, into money, that no expressed limit had ever been placed upon his authority as agent, even as between the plaintiffs and Bancroft; and certainly no such limitation appears to have been brought to the knowledge of the defendants, or of any merchant or banker with whom the plaintiffs' business was transacted by Bancroft. I extract, from the cross-examination of Payne, his evidence as to the agency of the collector:

Q. During all the time he was traveling salesman for your house, he was authorized to collect bills due, was he not?

A. Yes, from our customers.

Q. And that was his usual custom?

A. Yes, he was authorized; that was our mode then, and is now, of collecting bills from customers.

Q. And he had that authority from your house to collect bills from customers?

A. Yes.

Q. Did he have any authority to receipt the bills he collected; to receipt to merchants the bills he collected?

A. Well, sir, he had the same authority that any merchant—he had no direct authority, in words to him, he had none.

Q. He did have authority to receipt the bills that you sent him out to collect?

A. He had authority by reason of our recognizing that; in other words, we never said to receipt for these bills.

Q. Did you ever inform the defendants or any other bank what limit you would put on his authority?

A. We never informed anybody at all.

Q. Whatever limit you claimed to put on his authority, was simply between yourselves and Bancroft?

A. That was the custom, yes.

Q. State whether or not on this last trip he made, in December, 1885, he was not authorized to collect the bill from Parker?

A. He had the same general thing.

Q. The same general authority?

A. Yes.

Q. As to the collection of all claims at Tecumseh and elsewhere?

A. Yes.

Q. Parker was a customer of your house at that time?

A. Yes.

Q. And also Wilson & Ellsworth?

A. Yes.

It thus fully appears that Bancroft had authority to collect the bills receivable of plaintiffs on his route, and to receipt them, if paid, in the name of plaintiffs, and to receive the proceeds in money. Having such authority, he had also the apparent authority to receive payments from responsible customers in checks on their bankers, drawn payable to his employers and principal, and to endorse them in their name, and convert them into money at the bank.

In support of this view may be cited the authority of the most acceptable American commentator (Parsons on Contracts, vol. I, chap. III., p. 44) as to the distinction between general and special agencies, in which he says: "Of late years, courts seem more disposed to regard this distinction and the rules founded upon it, as altogether subordinate to that principle which may be called the foundation of the law of agency; namely, that a principal is

responsible, either when he has given to an agent suffi-
cient authority, or when he justifies a party dealing with
his agent in believing that he has given to this agent this
authority.

"Where the agency is implied from general employment,
it may survive this employment, and will be still implied
in favor of those who knew this general employment, but
have not had notice of the cessation of the employment,
and cannot be supposed to have had knowledge thereof."

The case cited by counsel for defendant in error, of
*Kasson v. Noltner*, from 43 Wis., 646, is quite in point of
exact illustration of this distinction, and is an instructive
case. This point also arose, and these views of the law of
agency were expressed as controlling the decision in the
case of *Webster v. Wray*, 17 Neb., 579, and also in that of
the *White Lake Lumber Co. v. Stone*, 19 Id., 402.

The plaintiffs in error further urge, as their second point,
the error of the court below in admitting in evidence a
certain deposition objected to. As to this objection we have
heretofore held, repeatedly (on the authority of 1 Greenleaf,
sec. 49), that in an action tried to the court without a
jury, except in rare and extraordinary cases, a reviewing
court will not consider an alleged error of the court below
in the admission of evidence; since whatever be the grounds
of objection, the court must, of necessity, hear or read the
evidence to determine its character and value. Alleged
error of this nature is not deemed to have prejudiced the
issues of either party, or to have influenced the judgment
of the court; and while I incline strongly to the opinion
that the deposition admitted and complained of was admis-
sible evidence, that question will not be further considered.

The judgment of the district court is affirmed.

JUDGMENT AFFIRMED.

The other Judges concur.