PLUTO POWDER COMPANY, Appellant, vs. CUBA CITY STATE BANK, Respondent.

*April 9—April 29, 1913.*

*Principal and agent: Negotiable paper: Execution and indorsement: Authority when implied: Liability of third persons: Ratification: Appeal: Review: Sufficiency of exceptions.*

1. One who cashes a check upon the unauthorized indorsement of an agent of the payee is liable to the principal in case the proceeds are misappropriated by the agent.

2. The facts that an agent has possession of the goods of his principal for sale, that he is accustomed to receive checks for goods sold, payable to his principal, and sometimes collects money on sales, that he receipts for goods and also for moneys collected in the name of the principal, and has authority to employ help, to incur expense for livery, and to include livery bills in his account, do not clothe such agent with apparent or implied authority to indorse the principal's name upon checks so received or other negotiable paper.

3. Authority to execute or indorse negotiable paper will not be implied from express authority to transact some other business, unless it is necessary to the exercise of the express authority.

4. Third persons having notice that they are dealing with an agent are bound to inform themselves of the extent and limitations of his authority.

5. Even an agent with general authority to manage the business of his principal has not, by reason thereof, implied power to execute or indorse negotiable paper.

6. That the principal succeeds in obtaining from the agent part of the proceeds of checks unlawfully indorsed by him, is no evidence of ratification of his act in indorsing the same.

7. An exception to the refusal of the court to make a contrary finding, as requested, is a sufficient exception to the finding made to entitle the party excepting to a review thereof on appeal.

APPEAL from a judgment of the circuit court for Grant county: GEORGE CLEMENTSON, Circuit Judge. *Reversed.*

This action was brought to recover from the defendant the amount of certain checks drawn to plaintiff's order, indorsed in its name by its agent, and the amount of a sight draft drawn by the agent of the plaintiff in its name, upon which checks and sight draft the defendant bank collected the money and paid it to the plaintiff's agent. The complaint alleges that between January 28, 1909, and April 30, 1909, plaintiff was the owner of certain checks which were in the possession of one Robinson, its agent, at Cuba City, Wisconsin, where the defendant bank is located; that the said agent without authority indorsed the checks in the name of the plaintiff and obtained the money thereon from the defendant; that on April 30, 1909, said Robinson without authority drew a draft for $200 upon a certain mining company, and without authority signed plaintiff's name thereto and deliv-

ered the same to the defendant and obtained the amount thereof from said defendant; that said checks and draft amount to $1,910.40, of which sum plaintiff received only $1,210.40, leaving a balance of $700 due from defendant to plaintiff.

The answer contains certain admissions and denials. At the close of the evidence, by consent of parties, the jury was discharged and the case submitted to the court. The court made the following findings:

"1. That during the years 1908 and 1909 the plaintiff was a manufacturer of dynamite, with its principal office at Buffalo, New York.

"2. That in the summer or early fall of 1908 the plaintiff appointed one R. M. Robinson its agent at Cuba City, Wisconsin, with authority to sell the product of plaintiff at Cuba City and vicinity, and collect payment therefor from the parties to whom said product was sold.

"3. That the checks described in the complaint were checks given to the said R. M. Robinson, as agent of the plaintiff, by customers of plaintiff, in payment of dynamite purchased of plaintiff through said agent, R. M. Robinson.

"4. That the said R. M. Robinson, as agent of the plaintiff, had implied authority to indorse the name of the plaintiff upon and cash the said checks set forth in the complaint of plaintiff.

"5. That the said R. M. Robinson, as agent of the plaintiff, had implied authority to draw the sight draft set forth in the complaint, and that the plaintiff, with knowledge of the act of its said agent in drawing said sight draft, received and accepted from him the proceeds thereof.

"6. That the defendant acted in good faith in cashing said checks set forth in the complaint, without any knowledge or information that to do so was contrary to the wishes or authority of the plaintiff."

The court concluded that the defendant was entitled to judgment dismissing the plaintiff's complaint with costs. Judgment was entered accordingly, from which this appeal was taken.

*Charles N. Brown,* for the appellant, cited, among other authorities, 2 Bolles, Banking, 730; *Johnson v. First Nat. Bank,* 6 Hun, 124, affirmed 68 N. Y. 616; *Robinson v. Chemical Nat. Bank,* 86 N. Y. 404; *Schmidt v. Garfield Nat. Bank,* 138 N. Y. 631, 19 N. Y. Supp. 252; *Millard v. National Bank,* 3 MacArthur (D. C.) 54; 31 Cyc. 1336, 1341, 1382, 1383; 1 Am. & Eng. Ency. of Law (2d ed.) 987, 1030; *Cummins v. Beaumont,* 68 Ala. 204; *Sawyer v. C. & N. W. R. Co.* 22 Wis. 403; *Hurley v. Watson,* 68 Mich. 531, 36 N. W. 726; *Bohart v. Oberne,* 36 Kan. 284, 13 Pac. 388; Tiedeman, Comm. Paper, § 77; Mechem, Agency, §§ 382, 398; 1 Clark & Skyles, Agency, 619, 652; *Jackson P. M. Co. v. Commercial Nat. Bank,* 199 Ill. 151, 65 N. E. 136; *Hamilton Nat. Bank v. Nye,* 37 Ind. App. 464, 77 N. E. 295; *Wm. Deering & Co. v. Kelso,* 74 Minn. 41, 76 N. W. 792; *Graham v. U. S. Sav. Inst.* 46 Mo. 186; *Jackson v. Bank,* 92 Tenn. 154, 20 S. W. 802; *Goodell v. T. M. Sinclair & Co.* 112 Ill. App. 594.

*S. E. Smalley,* for the respondent.

KERWIN, J.    The only serious question in this case is whether the agent, Robinson, had authority, implied or otherwise, to indorse checks made in favor of plaintiff given in payment of goods sold or to draw drafts in the name of plaintiff. It is clear that the agent had no express authority. The court below found that Robinson had implied authority, and the question arises whether such finding is supported by the evidence. The appellant deals in explosives, with headquarters in New York. In the summer of 1908 one Robinson was employed as representative of plaintiff at Cuba City, Wisconsin, to make sales of goods. The goods were shipped by plaintiff to Robinson, usually in carload lots, freight prepaid, addressed to *Pluto Powder Company.* The bills of lading were sent to Robinson and he received the goods from the railroad company, placed them in plaintiff's magazine at Cuba City,

sold to mining companies and others, and reported sales to the office of plaintiff in New York, and invoices were sent to the purchasers by plaintiff from its office. It was understood that the purchasers, generally, should remit to the office of the plaintiff, although some small sales were made for cash and the money collected in such instances by Robinson. He also had authority to collect from two mining companies, who for certain reasons desired to deal directly with him. It was his duty in all cases to remit checks and drafts received in payment of goods to the plaintiff, and if he received cash to remit that by draft, but he had no authority to sign the name of the plaintiff to commercial paper in any case unless such authority can be implied from the acts and dealings of Robinson with the defendant and purchasers of goods. We find no evidence in the record sufficient to charge the plaintiff with notice that Robinson ever signed its name to negotiable paper until about the 30th of April, 1909, when due investigation was made, the defalcation discovered, and Robinson discharged. So that all checks and drafts, the proceeds of which are claimed in this action, were negotiated and the name of plaintiff signed thereon before the plaintiff had knowledge that Robinson signed its name to commercial paper.

The question, therefore, is presented whether the fact that Robinson acted as salesman of plaintiff, had possession of its goods, and received checks payable to plaintiff, receipted for goods in the name of plaintiff, collected some money on sales when checks were not given payable to plaintiff, receipted for money collected in plaintiff's name, had authority to employ help, incur expense for livery, and to include livery bills in his account, clothed Robinson with implied or apparent authority to sign the name of plaintiff to commercial paper. We think the great weight of authority is to the effect that upon the undisputed evidence in this case Robinson had no authority, express or implied, to sign the name

of plaintiff to negotiable paper. In the instant case the defendant cashed the checks drawn payable to plaintiff upon the unauthorized signature by Robinson of the name of plaintiff. Robinson also drew a draft in the name of plaintiff and obtained the money thereon without authority. The bank therefore became liable to the plaintiff, the funds having been misappropriated by Robinson. *Robinson v. Chemical Nat. Bank,* 86 N. Y. 404; *Schmidt v. Garfield Nat. Bank,* 64 Hun, 298, 19 N. Y. Supp. 252, affirmed 138 N. Y. 631, 33 N. E. 1084; *Hogg v. Snaith,* 1 Taunt. 347.

Since no express authority was given Robinson to indorse or sign negotiable paper on behalf of plaintiff, such power must be shown to be necessary to the exercise of the power conferred, and the burden was upon the defendant to show implied authority. *Ames v. D. J. Murray Mfg. Co.* 114 Wis. 85, 89 N. W. 836; *Parr v. Northern E. M. Co.* 117 Wis. 278, 93 N. W. 1099; *McDermott v. Jackson,* 97 Wis. 64, 71, 72 N. W. 375; *Heath v. Paul,* 81 Wis. 532, 51 N. W. 876; *Jackson P. Co. v. Commercial Nat. Bank,* 199 Ill. 151, 65 N. E. 136. Third persons having notice that they are dealing with an agent are bound to inform themselves of the extent and limitations of his authority. 31 Cyc. 1336, 1341; *Sawyer v. C. & N. W. R. Co.* 22 Wis. 403; *Hurley v. Watson,* 68 Mich. 531, 36 N. W. 726; *Bohart v. Oberne,* 36 Kan. 284, 13 Pac. 388. Tiedeman on Commercial Paper, § 77, states the rule thus:

"We have this general rule that applies to all cases of implied agencies, that no authority will be implied from an express authority, unless it is positively needful for the performance of the main duties contemplated by the express authority. . . . And the execution and negotiation of commercial paper are considered by the commercial world so liable to the infliction of injury on the principals, if this authority is given to agents,—the general custom being to reserve this power for personal exercise,—that the presumption of the law is more strongly opposed to an implied authority to exe-

cute and negotiate commercial paper than to do anything else. Hence, in this connection, the rule is strictly enforced, that the authority to execute and indorse bills and notes as agent will not be implied from an express authority to transact some other business, unless it is *absolutely* necessary to the exercise of the express authority."

The authorities very generally hold that an agent with general authority to manage the business of his principal has not, by reason thereof, implied power to indorse or execute negotiable paper. Tiedeman, Comm. Paper, § 77; Mechem, Agency, §§ 398, 382; 1 Clark & Skyles, Agency, 619, 652; 1 Am. & Eng. Ency. of Law (2d ed.) 1030; 31 Cyc. 1382, 1383, and cases cited; *Jackson P. Co. v. Commercial Nat. Bank,* 199 Ill. 151, 65 N. E. 136; 1 Daniels, Neg. Inst. (5th ed.) § 297.

The mere fact that Robinson had authority to receive negotiable paper in payment for goods sold carried with it no power to indorse it. *William Deering & Co. v. Kelso,* 74 Minn. 41, 76 N. W. 792; *Jackson v. Bank,* 92 Tenn. 154, 20 S. W. 802; *Graham v. U. S. Sav. Inst.* 46 Mo. 186.

We also desire in passing to briefly refer to the manner in which business was transacted between Robinson and the bank. Robinson opened a personal account with the defendant. He had but very little money of his own to his credit, and indorsed checks payable to plaintiff for large sums and placed the money to his own credit in his personal account. There can be no doubt under the evidence but that the defendant knew that he was mingling the plaintiff's funds with his own when he cashed checks through the defendant bank by signing the name of the plaintiff thereon and leaving the funds to his own credit in defendant bank. It is clear from the evidence that there was no necessity for him, in the discharge of his duties as agent, to indorse the checks or make the sight draft as he did through the defendant bank.

We shall briefly consider the principal authorities cited to our attention by counsel for respondent.

**31** Cyc. 1373, states the rule that where an agent is employed to make collections he is presumed to be clothed with such powers as are usual and necessary to insure success in collecting. And it is further said: "The authority of an agent employed to make collections, however, carries no implied power to transfer or sell negotiable paper, or other interest-bearing debt, nor to collect such paper before maturity."

In *Ballston Spa Bank v. Marine Bank,* 16 Wis. 120, a cashier of a bank executed a promissory note to borrow money in the business of the bank and 'the money was actually used by the bank in its business and the loan acquiesced in by the board of directors. Held, that the bank ratified the act of the cashier in giving the note, which ratification was equivalent to previous express authority and the bank was liable.

*Kasson v. Noltner,* 43 Wis. 646, holds that a principal is responsible for the acts of his agent when he has either given the authority to do the act or justified the party dealing with the agent to believe that the latter had such authority. To the same effect are *Bouck v. Enos,* 61 Wis. 660, 21 N. W. 825; *Bentley v. Doggett,* 51 Wis. 224, 8 N. W. 155; and *Andrews v. Robertson,* 111 Wis. 334, 87 N. W. 190.

*Lorton v. Russell,* 27 Neb. 372, 43 N. W. 112, is relied upon as being specially in point. But in that case as in others relied upon the rule of apparent authority and ratification governed the case. In the instant case there is not sufficient evidence to support the findings to the effect that Robinson had apparent authority to make or indorse negotiable paper in the name of plaintiff or that there was ratification as regards any of the paper which is the basis of this action.

Some claim is made by counsel for respondent that plaintiff ratified the drawing of the draft and indorsement of checks. But there is no evidence in the record sufficient to support a finding of ratification. The plaintiff had no knowledge that Robinson made the sight draft or indorsed the

checks until its manager arrived at Cuba City on or about April 30, 1909, and the fact that plaintiff's manager succeeded in obtaining from Robinson on May 1st some of the money unlawfully obtained by him was no evidence of ratification.

It is also insisted that the fourth finding, denominated a finding of fact, not having been excepted to, must be treated as a verity, and that it controls the case against the appellant because it establishes that the agent, Robinson, had authority to make the sight draft and indorse the checks in the name of the plaintiff. Even conceding for the purpose of this case that this finding is a finding of fact, we think it was sufficiently excepted to.

The question of implied authority was directly raised, as appears from the record, by the exception to the refusal of the requests of the plaintiff that the court make certain findings, one of which was that "The defendant had no reason to believe that the said R. M. Robinson had any authority to indorse the name of the plaintiff on any of the checks mentioned in the said complaint or to draw the sight draft therein." This amounted to a sufficient exception to the contrary finding made to entitle plaintiff to review it here. We hold that the fourth and fifth findings of fact are against the clear preponderance of the evidence.

Counsel for plaintiff requested the court below to find that Robinson had no express authority to indorse the name of the plaintiff upon checks, and that until the 29th day of April, 1909, and until after the last of such checks had been indorsed by Robinson in the name of the plaintiff, no officer of the plaintiff had any knowledge that Robinson had indorsed the name of the plaintiff to any check or instrument for the payment of money, and that Robinson as agent of the plaintiff had no express authority to draw the sight draft set forth in the complaint, and that the defendant had no reason to believe that Robinson had any authority to indorse the

name of the plaintiff upon any of the checks mentioned in the complaint or to draw the sight draft. Under the evidence produced these findings should have been made and judgment ordered for the plaintiff.

*By the Court.*—The judgment of the court below is reversed, and the cause remanded with direction to enter judgment for the plaintiff.