## Swift & Company v. Miller.

[No. 9,055.    Filed June 6, 1916.]

1. PLEADING.—*Demurrer.*—*Memoranda.*—*Sufficiency of.*—A memoranda accompanying a demurrer, as required by §344 Burns 1914, Acts 1911 p. 145, when designated as "argument" is subject to criticism, yet it is sufficient if it substantially meets the requirements of the statute.    p. 316.

2. PLEADING.—*Complaint.*—*Sufficiency of.*—"*Thereupon*".—A complaint alleging that, after the bank had refused payment of checks involved in the action, the plaintiff "*thereupon* notified the endorser" is sufficient as against a demurrer raising a question as to whether proper diligence had been exercised in notifying the endorser, as the word "thereupon" signifies immediately or at once.    p. 317.

3. PRINCIPAL AND AGENT.—*Authority of Agent.*—*Scope.*—The authority of an agent to sell goods and collect therefor does not confer upon him implied authority to bind his principal by a separate, original and independent contract of endorsement, as such authority is implied only when it is necessary to complete the purpose and scope of the expressed power of the agency.    p. 319.

4. PRINCIPAL AND AGENT.—*Authority of Agent.*—*Limitations.*—*Endorsement of Negotiable Instruments.*—Where an agent, with authority to sell goods, collect and remit therefor, was furnished by his principal with a stamp with which customers' checks were to be endorsed in buying exchange payable to the principal, the wording of the stamp, "Pay to . . . . . . . . . . . . . . . . . . . . . . . . . or order for exchange, payable to Swift & Company.    Swift & Company, By . . . . . . . . . . . . . . . . . . . . ." indicated very clearly that the stamp was to be used solely in endorsing customers' checks for the purpose of buying exchange payable to Swift & Company, and there could be inferred from the agent's possession of the stamp and the language impressed thereon no authority for the agent to endorse his personal checks even to secure exchange payable to his principal, especially since such use of the stamp was not necessary to the complete exercise of the agent's power.    p. 322.

5. PRINCIPAL AND AGENT.—*Authority of Agent.*—*Limitations.*—*Endorsement of Negotiable Instruments.*—*Burden of Proof.*—Where an endorsement stamp, provided by the principal, has such wording upon it as to indicate a limitation of its use to the endorsement, by the agent possessing it, of customers' checks payable to the principal, such stamp is sufficient to put others on inquiry as to the extent of the agent's authority to endorse checks therewith, and where one relies on the authority of the agent to endorse his personal checks with the endorsement stamp, the burden is on him to show such authority in the agent.    p. 323.

6. BILLS AND NOTES.—*Bank Check.*—*Presentment.*—*Time.*—Under §9089s2 Burns 1914, Acts 1913 p. 132, providing that an instrument payable on demand, such as a bank check, must be presented

within a reasonable time after its issue, such reasonable time for presentment, under ordinary conditions, when the holder resides at the place where the check is made payable, includes all of the banking hours of the day immediately following the day on which the check is received.   p. 325.

7.  BILLS AND NOTES.—*Bank Check.—Presentment.—Time.*—Where the bank upon which the check is drawn is at another place, the check must be forwarded to the place of payment on the next business day, and be presented not later than the day immediately following the day of its receipt at the place of payment.   p. 326.

8.  BILLS AND NOTES.—*Bank Check.—Presentment.—Time.*—As between the holder and drawer of a check delay in presentment will not ordinarily discharge the drawer from liability, but if loss results from the delay for which the drawer is not responsible, the delay is at the peril of the holder.   p. 326.

9.  BILLS AND NOTES.—*Bank Check.—Presentment.—Time.—Delayed Notice of Dishonor.—Discharge of Endorser.*—As between the holder of a check and an endorser, unreasonable delay in presentment for payment, or in giving notice of dishonor, will discharge the endorser from his liability without regard to whether such delay did or did not occasion loss to the holder.   p. 326.

10.  BILLS AND NOTES.—*Presentment for Payment.—Delay.—Answer.—Sufficiency.*—Under §9089s2 Burns 1914, Acts 1913 p. 132, which provides that an instrument payable on demand must be presented for payment within a reasonable time, in an action against the endorser to enforce collection of checks, an answer was filed interposing the defense that there had been a delay of several days in presenting for payment the checks involved and that such delay was unreasonable.  *Held*, that such delay was unreasonable and that it was error to sustain a demurrer to such answer.   p. 330.

11.  BILLS AND NOTES.—*Bank Checks.—Notice of Dishonor.—Sufficiency of Notice to Agent of Endorser.*—Where one employs an agent to sell goods, and to collect and remit therefor, and furnishes such agent an endorsement stamp to be used in endorsing customers' checks to the principal to buy exchange payable to such principal, which limitation of the use of the stamp is indicated by the language impressed thereon, and the agent, without authority, uses the stamp to endorse his principal's name on his personal checks, which were subsequently dishonored by the bank, and suit is brought against the principal, as endorser, to enforce collection of the checks, a notice of the dishonor of such checks to the agent and his successor is not notice to the principal or to "his agent in that behalf" within the meaning of §9089s3 Burns 1914, Acts 1913 p. 136. p. 331.

12.  BILLS AND NOTES.—*Bank Checks.—Notice of Dishonor.—Delay.—Answer.—Sufficiency.—Discharge of Endorser.*—In a suit against an endorser to enforce collection of checks dishonored by the bank, an answer, interposing as a defense that notice of the dishonor of

the checks had not been given the defendant until more than a month thereafter, is good as against demurrer, as such answer shows affirmatively that notice was not given in accordance with the provisions of §9089y3 and §9089z3 Burns 1914, Acts 1913 p. 136, and the defendant was, therefore, discharged from liability as endorser.   p. 331.

13. PRINCIPAL AND AGENT.—*Use of Principal's Name for Private Advantage.*—An agent can not take advantage of his position to use his principal's name to his own private advantage.   p. 331.

14. PRINCIPAL AND AGENT.—*Authority.*—*Evidence.*—*Sufficiency to Sustain Verdict.*—A judgment was obtained by the plaintiff in a suit against an endorser to enforce collection of checks dishonored by the bank, the evidence disclosing that an agent employed to sell goods and remit his collections was furnished by his principal with an endorsement stamp to be used in endorsing his principal's name on customers' checks to buy exchange payable to the principal, the language impressed on the stamp indicating such a limitation of its use, and that the checks involved in the action, which had been endorsed with the principal's endorsement stamp, were the personal checks of the agent.   *Held,* that, in the absence of any evidence to show express or implied authority in the agent to endorse his personal checks with his principal's name, the evidence was insufficient to sustain a verdict for the plaintiff.   p. 332.

From Knox Circuit Court; *Benjamin M. Willoughby,* Judge.

Action by George S. Miller against Swift & Company. From a judgment for plaintiff, the defendant appeals.   *Reversed.*

*Clarence B. Kessinger* and *R. C. McManus,* for appellant.   *Harry R. Lewis,* for appellee.

FELT, J.—This suit was brought by appellee, Miller, against appellant, Swift & Company, to recover on two checks drawn by L. N. Elson on the German National Bank of Vincennes, Indiana, payable to the order of Swift & Company and indorsed as follows:

"Pay to Miller Bros. or order for exchange payable to Swift & Company.
                 Swift & Company by L. N. Elson."

Appellant's demurrer to the complaint for in-

sufficiency of the facts alleged to state a cause of action was overruled. Appellant answered the complaint in five paragraphs, the first of which was a general denial. A demurrer for insufficiency of facts alleged to state a defense to appellee's cause of action was sustained to each of the amended third and fifth paragraphs of answer. A trial by court resulted in a judgment for appellee for the amount of the checks. Appellant has separately assigned as error the ruling on the demurrer to the complaint and to each amended paragraph of answer aforesaid, and also the overruling of its motion for a new trial.

The facts stated in the complaint are in substance as follows: At and prior to the time the checks sued on were drawn, appellee was engaged in the drug business in the city of Vincennes, Indiana, and was also a subagent for the American Express Company and sometimes did business for the company under the name of "Miller Brothers." One L. N. Elson was employed by Swift & Company to sell its goods in the city of Vincennes and to collect therefor, and he frequently bought orders from appellee for the purpose of remitting to appellant collections made by him in its business. In paying for such orders Elson gave to appellee money and checks. The checks were payable to appellant and were endorsed as follows: "Pay to Miller Bros., or order for exchange payable to Swift & Company (signed) Swift & Company, by L. N. Elson." Among the checks given appellee were those in controversy, one for $244, dated September 11, 1913, and one for $552.24, dated October 13, 1913. A copy of each of said checks was filed with and made a part of the complaint. Appellee issued express money orders on the American Express Company payable to appellant for the amount of the checks and paid the company therefor. Thereafter appellee caused said

checks to be presented to the bank on which they were drawn for payment and payment was refused. Thereupon appellee notified appellant of the refusal of the bank to pay the checks. On November 22, appellee again notified appellant in writing by registered mail. Appellee also demanded payment of each of the checks from L. N. Elson and payment was refused. Appellee thereupon notified appellant of the nonpayment of each of said checks, which demand and notice were made and given immediately after the bank had refused payment of each check. By reason of the facts aforesaid appellant is indebted to appellee in the sum of $796.24, which amount is due and unpaid.

Appellant's memoranda accompanying the demurrer to the complaint is denominated "argument" and is assailed by appellee as insufficient to present any question under the sixth clause of §344 Burns 1914, Acts 1911 p. 415. The memoranda is

1. subject to criticism, but looking to its substance rather than its form, we think it substantially meets the requirements of the statute, notwithstanding the misleading and erroneous appellation given to it. The substance of the memoranda is that the complaint seeks to hold appellant liable as an indorser; that as an indorser it is entitled to all the rights and defenses authorized by the common law and commercial usage as the same have been enacted into the statutes of our State (§9089 et seq. Burns 1914, Acts 1913 p. 120 et seq.); that the complaint does not show due diligence on the part of appellee when the checks were dishonored, in the giving of notice to appellant; that the complaint does not show that appellant was notified within the time prescribed by the statute. The complaint charges that the checks were duly presented for payment and the bank on which

they were drawn refused payment and that, "He * * * *thereupon* notified the endorser, Swift & Company, * * * of the refusal of said bank to pay said checks and each of them."

2. The word "thereupon" signifies that the bank was "immediately, at once, without delay" (Webster's Dictionary) so notified. There was no motion to make the complaint more specific, and as against the demurrer the complaint is not objectionable on the ground alleged and was not insufficient on any ground presented by the memoranda. The court, therefore, did not err in overruling the demurrer thereto.

As already shown, the first paragraph of appellant's answer was a general denial. The second paragraph is drawn on the theory of fraud by appellant's former agent, Elson, and appellee, in the drawing and acceptance of the checks in the manner aforesaid to procure the money from appellant. The third amended paragraph of answer proceeds on the theory that the endorsement of the check for $244 in the manner aforesaid was unauthorized and that there was unreasonable delay in presenting the checks to the bank for payment. It alleges in substance that as to that part of appellee's complaint which seeks to recover upon the check for $244 dated September 11, 1913, appellee ought not to recover for the reason that said check was endorsed by appellant to appellee on September 11, 1913; that it was held by appellee for a period of seven days from that date before the same was presented for payment to the bank on which it was drawn; and that this check was signed and endorsed by said L. N. Elson without the authority of appellant. The fourth paragraph of answer in substance alleges that L. N. Elson was the agent of appellant in Vincennes, Indiana, to sell

its products and collect for same; that appellant provided said Elson with a stamp in form as follows:

"Pay to —————— or order for exchange, payable to Swift & Company.

Swift & Company.

By—————.."

That said stamp was furnished for the sole and only purpose of enabling said Elson to. endorse checks of appellant received in payment of its products for exchange payable to appellant; that appellant knew that such was the extent of Elson's authority and that he had no right or authority to endorse his own checks with such stamp, and appellee accepted the checks in suit with full knowledge thereof and with knowledge of the fact that Elson had no funds in the bank, upon which the checks were drawn, out of which the checks could be paid, but accepted the same intending thereby to seek to hold appellant liable for the amount. The amended fifth paragraph of answer alleges in substance that the check for $244 set forth in appellee's complaint was received by appellee on September 11, 1913, and the check for $552.24 on October 13, 1913; that both of said checks were drawn by L. N. Elson in manner aforesaid; that without any authority so to do said Elson endorsed said checks in the name of appellant; that each of said checks was drawn upon the German National Bank of Vincennes, Indiana, which bank refused payment of the check for $244 on September 18, 1913, and of the latter check on October 14, 1913; that appellee knew that Elson endorsed the check in the name of appellant without its consent or authority, and failed to notify appellant, as such alleged endorser, of the dishonor of said checks until November 22, 1913; that appellant did not know prior to the receipt of said notice that said checks had been so drawn and endorsed by said Elson.

Three principal questions are discussed. The first is that of Elson's authority to endorse his own checks by use of the stamp furnished him by appellant and thereby bind appellant as endorser. The second is that of timely notice to appellant as endorser, if it be held to be endorser. The third is that of due and timely presentment of the check for $244. It is also suggested that appellant is liable as a maker. This contention is not even plausible, for the whole theory of the case is that appellant is liable as an endorser. On the theory of the complaint and the facts of the case, appellant is not liable at all unless liable as endorser of the checks sued upon. *Pattilo* v. *Alexander* (1895), 29 L. R. A. 616, 621; *Jaffray* v. *Krauss* (1894), 79 Hun. (N. Y.) 449. There is no claim that Elson as agent had any express authority to so endorse his own check, and the question turns upon the implied authority that may be inferred from his power to sell appellant's goods and collect therefor and the fact that he was furnished with the aforesaid stamp by appellant.

3. The authority of an agent to sell goods and collect therefor does not confer on him implied authority to bind his principal by the separate, original and independent contract of endorsement. This proposition of law has been applied in this State in the case where the agent authorized to sell and collect received a check payable to his principal for the goods sold, and without any authority other than his power to sell goods and collect therefor, endorsed the check by writing on the back thereof the name of his principal and thereby received in person the amount of the check. *Hamilton National Bank* v. *Nye* (1905), 37 Ind. App. 464, 467, 77 N. E. 295, 117 Am. St. 333; *Runyan* v. *Snell* (1888), 116 Ind. 164, 167, 18 N. E. 522, 9 Am. St. 839; *Blackwell* v. *Ketcham* (1876), 53 Ind. 184, 186; *Robinson* v. *Anderson* (1886), 106 Ind. 152, 155,

6 N. E. 12; *Knowlton* v. *School City, etc.* (1881), 75 Ind. 103, 107; *Stainback* v. *Bank, etc.* (1854), 11 Va. (Grattan), 269; *Myers* v. *Walker Bros. Co.* (1897), 104 Ga. 316, 30 S. E. 842; *Pluto Powder Co.* v. *Cuba, etc., Bank* (1913), 153 Wis. 324, 329, 141 N. W. 220; *Wallace* v. *Bank* (1840), 1 Ala. 565, 571; *German National Bank* v. *Studley* (1876), 1 Mo. App. 260, 264; 1 Daniel, Neg. Inst. §290.

Tiedeman on Commercial Paper, §77, is in part as follows: "We have this general rule that applies to all cases of implied agencies, that no authority will be implied from an express authority, unless it is positively needful for the performance of the main duties contemplated by the express authority. Whatever powers are strictly necessary to the effectual exercise of the express powers, will be conceded to the agent by implication. In order, therefore, that the authority to make or draw, accept and endorse, commercial paper as the agent of another may be implied from some other express authority, it must be shown to be strictly necessary to the complete execution of the express power. And the execution and negotiation of commercial paper are considered by the commercial world so liable to infliction of injury on the principals, if this authority is given to agents—the general custom being to reserve this power for personal exercise,—that the presumption of the law is more strongly opposed to an implied authority to execute and negotiate commercial paper than to do anything else. Hence, in this connection, the rule is strictly enforced, that the authority to execute and endorse bills and notes as agent will not be implied from an express authority to transact some other business, unless it is absolutely necessary to the exercise of the express authority." The rule above announced was approved in *Hamilton National Bank* v. *Nye, supra,* and is well supported by authority.

In Daniel on Negotiable Instruments, *supra,* it is said: "The authority to bind the principal in a certain character on a negotiable instrument can not be construed as an authority to make the principal a party in any other character. Thus authority to draw a bill is not of itself authority to endorse one, nor to accept one; nor does authority to endorse imply authority to accept a bill; nor to make a several or joint note. So it has been considered that authority to draw a bill upon the principal does not imply authority to the agent to draw in his own name; and that the principal would not be estopped from refusing payment by having paid previously a bill so drawn." In *Stainback* v. *Bank, etc., supra,* it was held that: "A power of attorney to draw, endorse or accept bills, and to make and endorse notes, negotiable at a particular bank, in the name of the principal, in the absence of anything to show a different intention, must be construed as giving authority to act only in the separate individual business of the principal: And an endorsement of a bill by the agent in the name of his principal, for the benefit of the agent, is beyond his authority, and does not bind the principal." In *Myers* v. *Walker Bros. Co., supra,* the Supreme Court of Georgia says: "It is well settled that a mere general power to endorse promissory notes does not confer upon the agent authority to make an endorsement for the accommodation of third persons." In *Pluto Powder Co.* v. *Cuba, etc., Bank, supra,* the Supreme Court of Wisconsin considered a case where the agent had power to sell and collect, and had general control of his principal's business, with authority to employ help, in a certain locality. In passing upon the question of such agent's authority to endorse a check made payable to his principal, the court, among other things, said:

"We think the great weight of authority is to the effect that upon the undisputed evidence in this case Robinson had no authority, express or implied, to sign the name of plaintiff to negotiable paper. In the instant case the defendant cashed the checks drawn payable to plaintiff upon the unauthorized signature by Robinson of the name of plaintiff. * * * The bank therefore became liable to the plaintiff, the funds having been misappropriated by Robinson. * * * Since no express authority was given Robinson to endorse or sign negotiable paper on behalf of plaintiff, such power must be shown to be necessary to the exercise of the power conferred, and the burden was upon the defendant to show implied authority. * * * Third persons having notice that they are dealing with an agent are bound to inform themselves of the extent and limitations of his authority. * * * The mere fact that Robinson had authority to receive negotiable paper in payment for goods sold carried with it no power to endorse it."

From the foregoing it is clear that Elson had no authority to endorse his own checks, payable to appellant, in the manner shown, unless such authority under the rules of law applicable thereto, can be inferred from the possession of the aforesaid stamp and the language impressed upon it, viz.:

"Pay to —————— or order for exchange, payable to Swift & Company.

Swift & Company.
                                                By ——————."

The language used imposed a very clear limitation upon the use of the stamp. It indicated that obligations payable to Swift & Company might be endorsed by using the stamp, but only for the purpose of securing "exchange payable to Swift & Company." Such stamp in the hands of

appellant's agent having authority to sell, collect and remit, can not reasonably be construed as implying authority to endorse the agent's personal check made payable to his principal, even though exchange be procured by the use of such check. Such use of the stamp by the agent was not necessary to the proper and complete exercise of the power actually conferred upon Elson as appellant's agent. The limitations of authority shown by the stamp itself were sufficient notice to appellee to put him upon inquiry as to the extent of such agent's authority and any reasonable inquiry of appellant would have revealed the lack of authority on the part of Elson to make such use of the stamp. In this situation the burden was on appellee to show the requisite authority and there is nothing shown beyond the facts already indicated. *Bright Nat. Bank* v. *Hartman* (1916), **61 Ind. App.** 440, 109 N. E. 846; *Wagner* v. *McCool* (1912), **52** Ind. App. 124, 134, 100 N. E. 395. The principle involved here was applied in *Runyan* v. *Snell* (1888), 116 Ind. 164, 18 N. E. 522, 9 Am. St. 839, where Mitchell, J. (p. 167) said: "There is no presumption that an agent, with authority to sell and accept payment for his principal, is authorized to receive in payment notes of which he is the maker, nor can he be presumed to have authority to accept the notes of third persons in payment of purchase-money due to his principal." Appellant's agent had no authority to use the stamp to make appellant his accommodation endorser, or to use it in any way except for the purpose of endorsing checks or obligations payable to appellant from customers or other third parties to enable him to procure exchange and remit to his principal.

While the third and fifth paragraphs of amended answer contain averments of lack of authority of the agent to endorse the checks in suit, such aver-

ments seem to be only incidental to the main tenor of such pleadings. The third paragraph purports to be a partial answer only showing undue delay in presenting the check for payment. The fifth paragraph of amended answer counts upon the fact that appellant did not receive due and timely notice to bind it as an endorser of the checks sued upon. Section 9089k3 Burns 1914, Acts 1913 pp. 120, 135, provides that: "When a negotiable instrument has been dishonored by nonacceptance or nonpayment, notice of dishonor must be given to the drawer and to each endorser, and any drawer or endorser to whom such notice is not given is discharged." The Uniform Negotiable Instruments Act, §9089y3, *supra*, Acts 1913 p. 136, further provides as follows: "Where the person giving and the person to receive notice reside in the same place, notice must be given within the following times: 1. If given at the place of business of the person to receive notice it must be given before the close of business hours on the day following. 2. If given at his residence, it must be given before the usual hours of rest on the following day." Section 9089z3, *supra*, provides that: "Where the person giving and the person to receive notice reside in different places, the notice must be given within the following times: 1. If sent by mail, it must be deposited in the postoffice in time to go by mail the day following the day of dishonor or if there be no mail at a convenient hour on that day, by mail the next thereafter. 2. If given otherwise than through the postoffice, then within the time that notice would have been received in due course of mail, if it had been deposited in the postoffice within the time specified in the last sub-division."

Section 9089s3, *supra*, provides that: "Notice of dishonor may be given either to the party himself or to his agent in that behalf." Section 9089c7, *supra*,

Acts 1913 p. 149, provides that: "A check is a bill of exchange drawn on a bank payable on demand. Except as herein otherwise provided, the provisions of this act applicable to a bill of exchange payable on demand apply to a check." Section 9089s2, *supra*, Acts 1913 p. 132, provides that: "Where it (the instrument) is *payable on demand*, presentment must be made within a reasonable time after its issue, except that in the case of a *bill of exchange*, presentment for payment will be sufficient if made within a reasonable time after the last negotiation thereof." Section 9089r2, *supra*, "Presentment for payment is not necessary in order to charge the person primarily liable on the instrument. * * * But except as herein otherwise provided, *presentment* for payment is necessary *to charge the drawer and endorsers.*"

The gist of the third paragraph of amended answer is that appellant as endorser of the check for $244 is not liable thereon because appellee held the same for seven days before presenting it to the bank on which it was drawn for payment. Appellee resided in the city of Vincennes in which city the bank was located. The Uniform Negotiable Instruments Act (§9089n7 Burns 1914, Acts 1913 p. 150) provides that: "In any case not provided for in this act the rules of the law merchant shall govern." The statute §9089s2, *supra*, provides that an instrument payable on demand must be presented within a reasonable time after its issue. Under the rules of the law merchant, a check must be presented within reasonable time after it is received. Under ordinary conditions when the holder resides at the place the check is made payable, such reasonable time for presentment includes all of the banking hours of the day immediately following the day on which the check is received. If

the bank upon which the check is drawn is at another place the check must be forwarded to
7. the place of payment on the next business day, and be presented not later than the day immediately following the day of its receipt at the place of payment. Crawford, Negotiable Instrument Law §186, p. 248; *DeHoust* v. *Lewis* (1908), 128 App. Div. 131, 132, 112 N. Y. Supp. 559; Wood's Byles, Bills and Notes (8th ed.) 19 *et seq.*, 5 Cyc 531 *et seq.* As between the holder and the drawer of a check delay in presentment will not ordi-
8. narily discharge the drawer from liability, but if loss results from the delay for which the drawer is not responsible, the delay is at the
9. peril of the holder. As between the holder of a check and an endorser, unreasonable delay in presentment for payment, or in giving notice of dishonor, will discharge the endorser from his liability without regard to whether such delay did or did not occasion loss to the holder. *Gordon* v. *Levine* (1907), 194 Mass. 418, 421, 80 N. E. 505, 10 L. R. A. (N. S.), 1153, 120 Am. St. 565, 10 Ann. Cas. 241; *First Nat. Bank* v. *Currie* (1907), 147 Mich. 72, 110 N. W. 499, 9 L. R. A. (N. S.), 698, 701, 118, Am. St. 537, 13 L. R. A. 43; *LaFollette Coal, etc., Co.* v. *Whiting Foundry, etc., Co.* (1900), 25 Ind. App. 647, 649, 57 N. E. 255 and cases cited; *Carroll* v. *Sweet* (1891), 128 N. Y. 19, 22, 37 N. E. 763, 13 L. R. A. 43; *Aebi* v. *Bank, etc.* (1905), 124 Wis. 73, 78, 102 N. W. 329, 68 L. R. A. 964, 109 Am. St. 925; *Dehoust* v. *Lewis, supra*, p. 132; *Commercial Nat. Bank* v. *Zimmerman* (1906), 185 N. Y. 210, 218, 77 N. E. 1020; *Little* v. *Phenix Bank* (1842), 2 Hill (N. Y.) 425; *Dolon* v. *Davidson*, 16 Misc. Rep. 316, 318, 39 N. Y. Supp. 394; *Murray* v. *Judah* (1826), 6 Cowen (N. Y.) 484, 490; *First Nat. Bank* v. *Miller* (1893), 37 Neb. 500, 55 N. W. 1064, 40 Am. St. 499,

503; *Stevens* v. *Park* (1874), 73 Ill. 387, 388; *Smith* v. *Janes* (1838), 20 Wend. (N. Y.) 192, 32 Am. Dec. 527; 2 Randolph, Commercial Paper §1106; 2 Daniel, Neg. Inst. §§1586, 1601; 5 Cyc 532 and cases cited; Tiedeman, Commercial Paper §442.

Joyce on Defenses to Commercial Paper, §585, says: "An endorser of a check is not liable where presentment is not made in a reasonable time. Where the payee of a check becomes chargeable as an endorser only, such check must be presented for payment within a reasonable time. * * * In order to charge an endorser upon a check or inland bill of exchange payable on demand, presentment must be made by the holder within a reasonable time after it comes into his possession. Where such reasonable time is not fixed by statute, then, in the absence of special circumstances of excuse, it is limited to the next business day, or if the bank upon which the check is drawn is at another place the check must be forwarded to the place of payment on the next business day, and presented at latest upon the day following its receipt at the place of payment." In 3 R. C. L., §446, p. 1224, it is said: "The distinguishing feature of the liability of an endorser of any negotiable paper is that such liability is contingent upon due presentment for payment and notice of dishonor. The rule is based upon the implied undertaking of the indorsee that he will use due diligence in the prosecution of his demand against the maker; that he will present the paper for payment immediately upon its maturity, and will not, by his negligence, expose the endorser to a hazard of loss, against which he, in case of notice of dishonor, might be able otherwise to protect himself. Without such notice the endorser would have a right to conclude either that the note was paid or that

the holder was satisfied to look alone to the maker
for payment.   Nor are the rights of the endorser
changed because he suffered no apparent damage by
reason of failure to demand payment and give notice
of dishonor to him within the required time.   If the
holder failed to perform this duty to give timely
notice of non-payment, the law presumes injury to
the endorser, and discharges him.   Neither justice
nor convenience will admit of an inquiry, whether
actual damage was sustained.   It was formerly held
that it was incumbent on the person insisting on the
want of notice, or other omission, to prove that he
had really sustained damage by laches of the holder;
but it has been settled by later decisions that such
damage is to be presumed." In *Gordon* v. *Levine*,
*supra*, the Supreme Court of Massachusetts said:
"'In determining what is a "reasonable time" or an
"unreasonable time" regard is to be had to the nature
of the instrument, the usage of trade or business, if
any, with respect to such instruments, and the facts
of the particular case.' This, however, would not
seem to lay down or establish any new rule.   The
nature of the instrument and the facts of the particu-
lar case have always been considered in passing upon
the question of reasonable or unreasonable time.   In
deciding, therefore, whether this check was pre-
sented within a reasonable time, if presented on
Friday, resort must be had to the rules which have
been hitherto established in similar cases.   And one
of the rules which has been established is, that where
the drawer and drawee and the payee are all in the
same city or town, a check, to be presented within reas-
onable time, should be presented at some time before
the close of banking hours on the day after it is
issued, and that its circulation from hand to hand
will not extend the time of presentment to the detri-
ment of the drawer.   If it is presented and paid

afterwards the drawer suffers no harm.    But if not presented and paid within the time thus fixed, and there is a loss it falls not on him but on the holder.'' In *Carroll* v. *Sweet, supra,* the New York Court of Appeals, in considering the liability of an endorser of a check, said: ''The plaintiff on accepting the check assumed, as between himself and the defendant, an obligation to present the same to the bank for payment within the time prescribed by the law merchant, that is to say, not later than the next day after its date, and if refused, to protest the same and give notice of non-payment. (*Smith* v. *Janes,* 20 Wend. 192). It was not presented until the thirty-first of August, nine days after it was received by the plaintiff.    The defendant was, by such delay, discharged from liability as endorser of the check, irrespective of any question of loss or injury.    Presentment in due time, as fixed by the law merchant, was a condition upon performance of which the liability of the defendant as endorser depended, and this delay was not excused although the drawer of the check had no funds, or was insolvent, or because presentment would have been unavailing as a means of procuring payment (*Mohawk Bank* v. *Broderick,* 10 Wend. 304; *Gough* v. *Staats,* 13 id. 549). A different rule obtains as between the holder and drawer of a check.    As between them presentment may be made at any time and delay in presentment does not discharge the liability of the drawer unless loss has resulted.''

In *First National Bank* v. *Currie, supra,* the Supreme Court of Michigan said: ''The undertaking of the endorser of a check is that, if not paid on presentation within a reasonable time, he will pay it, provided he is properly notified. Such reasonable time for presentation and demand for payment is admit-

ted to be within the day following the endorsement. The endorsee, as between himself and the endorser, undertakes to demand payment within the day following the endorsement, and, if payment is not made, to give due notice of dishonor. This is his sole duty, and he does anything else at his peril. 2 Daniel, Neg. Inst. (5th ed.) §1601; *People, ex rel. Port Chester Sav. Bank* v. *Cromwell*, 102 N. Y. 477, 4 N. E. 413. The fact that there are no funds in the account against which the check is drawn does not relieve the holder from presentation and notice of dishonor to the endorser, unless it appears that the endorser knew it. 2 Daniel, Neg. Inst. §1596; 1 Morse, Banks and Banking (4th ed.) §262 subd. 8. Nor are the rights of the endorser changed because he suffered no apparent damage by reason of failure to demand payment and give notice of dishonor to him within the required time. *Mohawk Bank* v. *Broderick*, 13 Wend. (N. Y.) 133.'' Following the statute and in harmony with the authority above indicated, we hold that a delay of seven days in presenting the check for $244 for payment was unreasonable, and that the court erred in sustaining the demurrer to the amended third paragraph of answer.

10.

The gist of the amended fifth paragraph of answer is that there was unreasonable delay in notifying appellant of the dishonor of both of the checks sued upon. The answer avers that appellant was not notified until November 22, after the dishonor of the checks on September 18 and October 14, 1913, respectively. The statute fixes the time for such notice. §§9089y3, 9089z3, *supra*. Appellee seems to rely on notice given to Elson and appellant's agent who succeeded him. We do not regard this argument as pertinent to the question of the sufficiency of the fifth paragraph of answer, further than the implied admission that the notice, on November

22, was too late to bind appellant as endorser. While under the statute notice of dishonor may be given to the principal or to "his agent in that behalf," we hold that on the facts of this case, neither Elson nor the agent who succeeded him, was the agent of appellant" in that behalf. Under the law applicable to the case the delay in giving appellant notice as alleged discharged it from liability as endorser without regard to the question of damage caused by such delay. The court therefore erred in sustaining the demurrer to the amended fifth paragraph of answer. In this case our decision is strengthened by the principle that an agent can not take advantage of his position to use his principal's name to his own private advantage. Furthermore the use of appellant's name in the manner indicated in endorsing the agent's personal check was sufficient notice to those accepting such checks that the agent was exceeding his authority, or at least it was sufficient to put such persons upon inquiry to ascertain the extent of his authority. *Claflin* v. *Bank* (1862), 25 N. Y. 293; *Allen* v. *South Boston R. Co.* (1889), 150 Mass. 200, 205, 22 N. E. 917, 5 L. R. A. 716, 15 Am. St.185. In *Claflin* v. *Bank, supra,* the court in substance said: No officer of the bank was authorized to certify a check when there were no funds of the drawer to meet it. * * * Nor can any officer or agent of the bank certify his own checks; *for no one acting in a fiduciary capacity as trustee or agent can employ his position for his own private benefit,* and where the name of the officer who certifies the check is the same as the drawer, that circumstance is sufficient to charge all persons dealing with the check that they are the same person, and

if such be truly the case, and the check were improperly certified, no holder could recover. Under the alleged error in overruling appellant's motion for a new trial the question is presented as to the sufficiency of the evidence to sustain the judgment. We have already indicated that Elson as agent had neither express nor implied authority to use appellant's name to endorse his own checks, and that the stamp furnished him did not give him apparent authority so to do, but it clearly indicated a restriction or limitation of his authority in that behalf. 7 Cyc 806-807 and cases cited. *Williams* v. *Potter* (1880), 72 Ind. 354.

There is therefore a total failure of evidence to show the agent's authority to endorse the checks sued upon or to give him apparent authority to endorse his own checks in the name of his principal. The motion for a new trial should therefore have been sustained upon the ground that the decision is not sustained by sufficient evidence and also on the ground that it is contrary to law. Our Uniform Negotiable Instruments Act is substantially like those of many other states where such statutes have been in force for many years. Most of the cases cited are from states having such statutes and the decisions deal with questions involving the statute. The judgment is therefore reversed, with instructions to overrule the demurrers to each of the amended third and fifth paragraphs of answer, to sustain the motion for a new trial, and for further proceedings not inconsistent with this opinion.

NOTE.—Reported in 113 N. E. 447.   See under (3), (4) 2 C. J. 636; 31 Cyc 1373, 1385; (8) 8 C. J. 545; 7 Cyc 979; (11) 8 C. J. 653; 7 Cyc 977.   Delay in presentment of check, release of endorser, 22 L. R. A. 785; 10 Ann. Cas. 1121; 10 L. R. A. (N. S.) 1153.