TERESA BRANNEN, Appellee, v. STATE EXCHANGE BANK OF PARKERSBURG, Appellant.

**PRINCIPAL AND AGENT:** Implied Authority to Indorse Negotiable
1 **Paper.** A self-constituted agent, who has assumed to deposit his principal's funds in a bank and to take and hold a certificate of deposit therefor in the name of the principal, and whose acts have been ratified by the principal, has no implied authority to indorse said certificate and to cause the amount thereof to be applied on the agent's debt to the issuing bank.

**EVIDENCE:** Competency—Intent. On the issue whether a party
2 had, by certain acts, discharged his original debtor and substituted another, he may testify directly as to his *intent* to discharge the original debtor.

**EVIDENCE:** Competency—Immaterial Belief. One who is put on in-
3 quiry as to the authority of an agent to indorse negotiable paper, and makes no inquiry, may not testify that he *believed* the agent had such authority.

*Appeal from Butler District Court.*—M. F. EDWARDS, Judge.

JANUARY 11, 1921.

ACTION at law to recover $612, with interest, evidenced by a certificate of deposit, alleged to have been paid by the bank to a person not authorized to redeem the certificate. Verdict and judgment for plaintiff. Defendant appeals.—*Affirmed.*

*W. T. Evans;* for appellant.

*Stipp, Perry, Bannister & Starzinger* and *E. G. Burling,* for appellee.

DE GRAFF, J.—Plaintiff, Teresa Brannen, née Schultz, is a resident of Seattle, Washington, and had lived in said city for several years prior to the bringing of this suit. In 1907, she resided with her sisters at Cedar Rapids. At the time she. changed her residence, she left a certificate of deposit with one of her sisters, and subsequently this sister turned the certificate over to a half brother, Herman Schultz, who, under the instructions of C. C. Wolf, cashier of the defendant bank, transferred the certificate from the issuing bank at Waterloo to the defendant bank, receiving therefor a duplicate deposit slip, reading as follows:

1. PRINCIPAL AND AGENT: implied authority to indorse negotiable paper.

"Deposited for account of Theresa Schultz in the State Exchange Bank of Parkersburg, Iowa, 3-18-1907.

"Currency ...............................$600.00
"Specie No. 33 ...........................
"Checks .................................   12.00

                                        ──────────

                                         $612.00
                                        "C. C. Wolf."

Plaintiff was not advised that the certificate had been placed in the possession of her brother, or that the same had been transferred to the defendant bank, nor did she instruct or authorize her sister to turn over the certificate to Herman, or to have same transferred to the Parkersburg bank.

The deposit slip was later put in the form of a certificate of deposit, which was renewed, from time to time. The final certificate read as follows:

                "State Exchange Bank of Parkersburg
"$648.96          Parkersburg, Iowa, Mch. 21, 1910.    No. 20469
         "Thresa Schultz has deposited in this bank
"Six hundred and forty-eight and 96/100.............Dollars, payable to the order of herself on the return of this certificate and proper identification 12 months from date. Interest at 4

per annum for 12 months.    Interest at..per annum for..months.

"C. C. Wolf, Cashier.

"Pd. 4-17-11.

" (Indorsed)

"Thresa Schultz.

"Herman Schultz."

At the end of the first year, the interest was sent by Herman Schultz to his sister Teresa, and subsequent interest was added to·the principal, and new certificates issued. No instructions or authorization were given by Teresa to her brother Herman, relative to the certificate in question, except that, in one instance, she wrote to him to have the certificate renewed, as it was past due.

On the 17th day of April, 1911, Herman Schultz indorsed her name on said certificate and cashed it, without any express authority from his sister, and applied the proceeds in payment of an indebtedness owed by him to the defendant bank. A short time prior to the surrender of the certificate, Herman Schultz had a conversation with Cashier Wolf, and the record testimony of Schultz is as follows:

" 'What do you say to taking it up?' and I said, 'What for?' Then he [Wolf] said, 'Oh, the bank examiner will be here next week, and you owe me so much there will be trouble, and it will look bad for me;' and I said, 'No, I cannot do that.' 'Why not? why not?' he said. 'You are her agent, and can do that,' and I said, 'No, I am not,' and he said, 'Yes, you have a right to do that, and it will be perfectly all right. You are her agent.' And I said: 'No, I am not. I am just holding it for her; I can't do that. I am just holding it for her.' And he said, 'That don't make any difference, take it up, and I will help you out, and you can make it back,' and I said, 'No, I can't do that, I won't do that,' and he said, 'Yes, you can; now you just let me have this, and it will be perfectly all right, and I will show you a way out so that you can make it back;' and I said, 'No, I can't do it.' "

After further talk of this character, Schultz finally indorsed the certificate, and, according to Schultz, the cashier told him "to sit tight, and say nothing about it." Cashier Wolf, on the witness stand, denied the conversation referred to above, but stated that he had no reason to think that these funds

belonged, in fact, to anyone except Teresa Schultz; that he treated the funds as her property; that all of the money that was paid on the certificate remained in the bank, and "all of it was applied upon a debt of Herman Schultz which he owed the bank." After the certificate had been deposited to the credit of Schultz, the latter drew a check on his funds, which included this deposit, to apply on his debt to the bank, evidenced by a $2,000 note. This was done with the knowledge of Wolf and the bank. In March, 1914, Herman Schultz sent to the plaintiff his note, prepared by the cashier, representing the money which the sister had in the defendant bank. The plaintiff denies accepting said note in payment of her claim, or that she ever confirmed or ratified the transaction in this particular.

The plaintiff was not advised of the surrender of her certificate of deposit until some time in the year 1914, when she received the promissory note from her brother, Herman, with a very brief explanation of his transaction with the bank. Later, this note was returned; but it was never paid, nor was any attempt made to enforce collection thereon.

I. The errors assigned by the appellant and relied on for a reversal of the judgment are: (a) The admission of testimony on behalf of the plaintiff, over the objection of the defendant; (b) the refusal to admit testimony offered on behalf of defendant; (c) the refusal of the court to give instructions requested by the defendant; (d) the giving of certain instructions; (e) the withdrawal from the jury, at the close of the testimony, of the defense that Herman Schultz was the agent of plaintiff, with authority or apparent authority to indorse and surrender the plaintiff's certificate of deposit to the defendant bank; and (f) the overruling of the motion for a new trial.

These assigned errors focus around the fundamental question in this case: *Has an agent, who has deposited his principal's money in a bank the authority to check it out, and apply the proceeds to his own indebtedness to the bank?* The correctness of the ruling of the trial court on this proposition will, in the main, determine the controversy, and with this proposition we are primarily concerned.

Herman Schultz was a self-constituted agent, in the first instance, in depositing his sister's money in the defendant bank;

for he acted on his own initiative, and without any instructions from the plaintiff. True, she impliedly ratified this act by accepting the interest due at the end of the first year, and later, by instructing Schultz to renew the certificate; but more than this she never did, in relation to the deposit.

Agency is a contractual relation, and the powers of the agent are created either by express authority conferred by his principal, or are such as arise by implication.

If the act of Schultz constituted a conversion of the property of plaintiff, no difficulty is encountered in reaching a correct legal conclusion. The deposit at all times was in the name of the plaintiff; and the final act of the alleged agent, in surrendering the certificate and applying the proceeds to his own indebtedness, was without the knowledge or consent of the title holder, but with the full knowledge and consent of the defendant bank.

No express authority having been given Schultz by this plaintiff, what facts, acts, or circumstances create his authority by implication? No inquiry was made by the cashier, Wolf, as to the authority of Schultz in the premises, and, according to the testimony of Schultz, he told the cashier that he (Schultz) had no such authority, and that he was not the agent of the plaintiff.

The surrender of the certificate by Schultz was, in effect, the borrowing of plaintiff's money from the bank to pay Schultz's indebtedness to the bank. The bank could put no other construction on this transaction. The very nature of this act was sufficient to put the bank on inquiry as to the authority that Schultz in fact had. The act itself was a warning, a danger signal, which the defendant bank was compelled to heed. A power so perilous cannot be implied from acts which, in other transactions, less hazardous, might create an agency.

So strict is this rule that the authority will not be presumed, even from an appointment of one as a general agent, unless the character of the business or the duties of the agent are of such a nature that he was bound to do the act, in order to carry out the duties of the agency. The very form of the certificate itself carried notice to the defendant bank of a possible want of power to make the indorsement of the title holder thereon, and was sufficient to put the cashier on his guard. When he fails to

avail himself of such notice and obtain the information which is thus suggested to him, it is his own fault; and, as against an innocent party, the bank must bear the loss.   It is elementary that the act of an agent not within the scope of his authority does not bind his principal.

The bank knew whose money it was, and that it was deposited for plaintiff's benefit, and in fact it became the debtor of the plaintiff for the amount of the deposit placed to her credit.   Its liability could be discharged only by payment of the debt.   Though Schultz was her agent by ratification, for the purpose of deposit, that was not sufficient to clothe him with authority to draw out the deposit.   See *Second Nat. Bank v. Gibboney,* 43 Ind. App. 492 (87 N. E. 1064) ; *Jackson v. Bank,* 92 Tenn. 154 (20 S. W. 802, 18 L. R. A. 663) ; *Jackson Paper Mfg. Co. v. Commercial Nat. Bank,* 199 Ill. 151 (59 L. R. A. 657) ; *Exchange Bank v. Thrower,* 118 Ga. 433 (45 S. E. 316) ; *West St. Louis Sav. Bank v. Shawnee County Bank,* 95 U. S. 557 (24 L. Ed. 490).

It is a general rule that an agent who has been employed in renting property and collecting the rents has no authority to apply the rent in payment of his own board bill, nor has such an agent any authority to receive anything in payment for rent except cash.   *National Loan & Inv. Co. v. Bleasdale,* 140 Iowa 695.

Where a person is authorized to lease property, it does not warrant the lessee in assuming that such person was authorized to cancel such lease.   *Faville v. Lundvall & Co.,* 106 Iowa 135.

Authority to collect a debt does not carry with it authority to accept the debtor's note.   *Holt v. Schneider,* 57 Neb. 523 (77 N. W. 1086).

In *Jackson Paper Mfg. Co. v. Commercial Nat. Bank,* supra, it is said:

"The weight of authority seems to be * * * that authority to indorse commercial paper can only be implied where the agent is unable to perform the duties of his agency without the exercise of such authority.   In other words, the power of an agent to indorse commercial paper for his principal must be a necessary implication from an express authority conferred on such agent.   Wherever such power is implied from the acts of the

agent, the acts, subject to such implication, must be acts of a kind like those from which the implication is drawn. * * * The power of an agent to bind the principal by the making or indorsing of negotiable paper can only be charged against the principal by necessary implication where the duties to be performed cannot be discharged without the exercise of such a power, or where the power is a manifestly necessary and customary incident of the character bestowed upon the agent, and where the power is practically indispensable to accomplish the object in view. An agent cannot bind his principal by making or indorsing notes for his own benefit or the benefit of third persons.''

It is held in *Pluto Powder Co. v. Cuba City St. Bank,* 153 Wis. 324 (141 N. W. 220), where no authority was expressly given to an agent to indorse or sign negotiable paper on behalf of the principal, such power must be shown to be necessary to the exercise of the powers actually conferred, in order that it may be implied; and the burden is on the person claiming such authority to prove it. In the opinion it is said:

''The mere fact that Robinson [the agent] had authority to receive negotiable paper in payment for goods sold, carried with it no power to indorse it.''

Tiedeman on Commercial Paper, Section 77, states the rule as follows:

''We have this general rule that applies to all cases of implied agencies, that no authority will be implied from an express authority, unless it is positively needful for the performance of the main duties contemplated by the express authority. * * * That the presumption of the law is more strongly opposed to an implied authority to execute and negotiate commercial paper than to do anything else.''

In order, therefore, that the authority to indorse commercial paper, as the agent of another, may be implied from some other express authority, it must be shown to be strictly necessary to the complete execution of the express power. In other words, only such powers as are strictly necessary to an effectual exercise of expressed powers will be conceded to the agent by implication. A court must be governed by the principles of the law, and not by the hardships of any case to which those principles apply.

We reach the conclusion that the trial judge properly took from the consideration of the jury the defense that Schultz was the agent of plaintiff in the particular act charged.

II.   As has been indicated, other errors assigned are subsidiary and incidental to the primary question on this appeal. Several objections were interposed to the admission of answers to certain interrogatories in plaintiff's deposition, read upon the trial.   Space will not permit the setting out *verbatim et seriatim* the questions to which objections were made by defendant.   Sufficient to state that some of the answers were admitted by the court with the understanding that certain letters would be produced later, and they were produced.

It is further contended that the court erred in admitting the answer of the plaintiff in her deposition as to her intent to discharge the defendant bank from liability.   We hold the evidence competent.   The defendant alleged, by way of defense in his answer, that plaintiff had made a settlement with her brother, and thereby substituted him as her debtor instead of the bank, and that she thereby ratified her brother's act in applying the certificate of deposit to his personal indebtedness to the bank.   This issue was submitted to the jury under proper instructions.

2. EVIDENCE: competency: intent.

A person's intent may be a material fact.   Declarations of a person regarding his intention, when his intention is a material fact in the case, are admissible in evidence.   *Kruse v. Seiffert & W. Lbr. Co.*, 108 Iowa 352; *Helm v. Anchor Fire Ins. Co.*, 132 Iowa 177; *Larson v. Thoma*, 143 Iowa 338.

During the examination of Cashier Wolf, the following question was asked, to which objections were made, and sustained by the court:

3. EVIDENCE: competency: immaterial belief.

"Q.   You may state whether or not at that time you believed that Herman .Schultz had authority to sign his sister's name to the certificate of deposit, from the course of business in relation to the certificate, the manner in which it had been done, the transactions in relation to it, and from what had transpired before, and his statements in reference to the matter."

In the first place, this question as to form and content is subject to the objection urged.   Furthermore, the belief of this

witness in the matter was material only so far as such belief was reasonably justified by the circumstances which were expressly or impliedly sanctioned, or were within the knowledge of the plaintiff. We have recited the circumstances in the preceding division of this opinion. Clearly, the agent's statements in reference to the matter would not be binding upon this plaintiff, and the agency could not be proved by the declarations or statements made by the alleged agent. *Lavelleur v. Nugent,* 186 Iowa 234.

The instructions requested by the defendant and refused by the court had relation to the apparent authority of the agent, Schultz, in regard to the disposition of the certificate in question. We have heretofore made answer to this contention, and we deem further comment unnecessary. We have carefully read the instructions given by the court, and we find no error therein. The judgment entered below must be sustained, and it is— *Affirmed.*

EVANS, C. J., WEAVER and PRESTON, JJ., concur.